# Sullivan v. Sullivan Timber Co.

*Action of Assumpsit.*

1.  *Action against foreign corporation; must be brought in county where it is doing business.*—Under the provisions of section 4 of article XIV of the constitution and section 2642 of the Code, a foreign corporation can be sued in any county where it does business; but a foreign corporation, having a known place of business in the State, is not subject to a personal action in a county beyond such place of business, unless it was doing business in such county at the time of the commencement of the suit, and it is immaterial that the contract was made, or the cause of action on which the suit is founded arose, at some past time, when the corporation was doing business in such county.

2.  *Same; not necessary for plea in abatement to negative the fact that the corporation was doing business in the county where suit is brought when the cause of action arose.*—Where a suit is brought against a foreign corporation in a county other than where it has its known place of business, a plea in abatement, which alleges that the defendant had a known place of business, and an authorized agent therein, in a different county, and that, at the time of the commencement of the suit, it was not doing business in the county where the suit was brought, is not demurrable because it fails to negative the fact that the defendant was doing business in the county where the suit was brought when the cause of action arose; such fact being immaterial to the maintenance of the action.

3.  *Same; when a corporation "does business" in a particular locality.* A foreign corporation "does business" in this State, or in a particular county of the State, within the meaning of the constitution, when it exercises therein some of the functions, powers, or franchises for which the corporation was created to perform, or is engaged in the

[Sullivan v. Sullivan Timber Co.]

transaction of the business, or any part thereof, which it was organized to transact.

4. *Same; same.*—The care by a foreign corporation, through its agent, of unused property, and the payment of taxes thereon, the payment of which is essential to the preservation of title in the owner, are not the exercise of corporate powers or franchises, nor the transaction of the business, or any part thereof, for which the corporation was created and organized, in such sort as to constitute the doing of business in the county where such property is situated, within the meaning of the constitution; and these acts do not give the courts of such county jurisdiction of a personal action against said corporation.

APPEAL from the Circuit Court of Conecuh.

Tried before the Hon. JOHN R. TYSON.

The facts of the case are sufficiently stated in the opinion.

STALLWORTH & BURNETT and TROY & WATTS, for appellant.

GREGORY L. & H. T. SMITH, *contra.*

BRICKELL, C. J.—The appellant, by summons and complaint, commenced an action against the appellee, averred to be a corporation under the laws of the State of Florida, doing business in the county of Conecuh. Service of summons was made in that county upon J. W. Black, the president of the company. The complaint contains two counts—the one for an account stated; the other for work and labor done. The defendant appeared and pleaded in abatement, alleging that it had a known place of business, and an authorized agent therein, in the city of Mobile, and that, at the time of the commencement of the suit, it was not doing business in the county of Conecuh. To this plea, the plaintiff demurred, assigning three causes; the first and second were, that the plea did not negative the fact that the defendant was doing business in the county of Conecuh, when the contracts were made on which the suit is founded; the third, that it did not appear from the plea that the court had not local jurisdiction of the action. The demurrer was overruled, and issue was taken on the plea. The defendant introduced evidence showing that its principal place of business was in Mobile, where it had authorized agents. It owned a saw mill in the

county of Escambia, and a railroad running therefrom, three or four miles into the county of Conecuh, and a derrick in that county, which had been used for the purpose of supplying the mill with logs. In consequence of litigation, the operation of the mill had been stopped prior to the commencement of the suit, and after its stoppage, the company had not done any business in Conecuh county. The plaintiff introduced evidence showing that at or about the time of the commencement of the suit, the defendant had a person in possession and taking care of the railroad and derrick; and that subsequent to the commencement of the suit, an agent of the company paid the taxes on its property in Conecuh county. This was all the evidence, and at the request of the defendant, the court instructed the jury to find the issue for the defendant. The rulings on the demurrer, and the instruction given to the jury, form the matter of the assignments of error.

It is apparent the case draws in question the construction of the last clause of the fourth section of the fourteenth article of the constitution, and of the statute, Code, § 2642. The section of the constitution in its entirety reads: "No foreign corporation shall do any business in this State without having at least one known place of business, and an authorized agent or agents therein; and such corporation may be sued in any county where it does business by service of process on an agent anywhere in the State." The statute reads: "A foreign or domestic corporation may be sued in any county in which it does business by agent." The section of the constitution, and the statute, (which in so far as it relates to foreign corporations, is merely affirmatory of the constitution), are remedial, intended to supply defects or correct mischiefs in the pre-existing state of the law; and in their construction, we are to consider what was the law before the constitution was adopted, and prior to the enactment of the statute; what were the defects it was intended to supply, or the mischiefs it was intended to correct.

By the common law, to maintain a personal action against a corporation, there must have been service of process upon its head or principal officer within the jurisdiction of the sovereignty from which corporate existence was derived. The officer upon whom, in the sov-

ereignty of its creation, service could be legally effected, binding the corporation, it may be, could be found in another jurisdiction, but he was not deemed to bear with him his official functions, and service upon him there effected, would not bind or affect the corporation. Whatever of legal proceedings could be pursued against the corporation, elsewhere than within the sovereignty of its creation, must have been authorized by legislation of the forum in which such proceedings were instituted.—*St. Clair v. Cox*, 106 U. S. 354; *Aldrich v. Anchor C. & D. Co.*, 32 Pac. Rep. 756; *McQueen v. Middletown Man. Co.*, 16 Johns. 5; *Peckman v. Haverhill*, 16 Pick. 274, 286; *Moulin v. Ins. Co.*, 24 N. J. Law, 244; *Camden Rolling Mill Co. v. Swede Iron Co.*, 32 N. J. Law, 15. Upon principles of comity, there was acquiescence in the maintenance of suits in this State by foreign corporations, and the making by them of such contracts as they had by the law of their creation capacity to make, if thereby our own laws of public policy were not offended.—*Lucas v. Bank of Georgia*, 2 Stew. 147; *Hitchcock v. U. S. Bank*, 7 Ala. 386; *Mayor v. Rodgers*, 10 Ala. 37; *W. U. Tel. Co. v. Pleasants*, 46 Ala. 641; *Eslava v. Ames Plow Co.*, 47 Ala. 384; *Imp. & Exp. Co. v. Locke*, 50 Ala. 332; *Thorington v. Gould*, 59 Ala. 461. But there was no statute providing for or regulating suits against them, except the statute authorizing the issue of an attachment for the seizure of property belonging to them, found in the State.—Code, 1852, § 2513; R. C. 1867, § 2938; Code, 1876, § 3263; Code, 1886, § 2940.

Private corporations, created and organized for the transaction of business and the derivation of pecuniary profits, are, in this country, it is said, mainly the growth of the last seventy-five years. In *McKin v. Odom*, 3 Bland. Ch. 407-418 (1828), it was said by Ch. Bland, that no instance of such a corporation in colonial times could be found.—Cook on Stocks and Stockholders, § 1. The increasing number of such corporations, and the variety and extent of the business they were created and organized to transact, their presence by agents, either by acquiescence, or by legislative permission, in other States, in the exercise of their general powers, making contracts, acquiring and disposing of property, rendered the rules of the common law, to which we have referred, the source of frequent inconvenience and injustice, compell-

ing a modification or relaxation of them. The principle came to be accepted, that if a foreign corporation sent its agents into another State, and there, by acquiescence or legislative permission of the State, engaged in the transaction of business, upon all causes of action there arising, it became subject to suit in such mode as the law of the State provided, or if there was no special provision for such suits, in the mode prescribed for suits against domestic corporations of like character.—*Moulton v. Ins. Co., supra; St. Clair v. Cox*, 106 U. S., *supra; Railroad Co. v. Harris*, 12 Wall. 65 ; *Railway Co. v. Whitton*, 13 Wall. 270 ; *Ex parte Schollenberger*, 96 U. S. 369 ; *Aldrich v. Anchor C. & D. Co., supra*. But if the corporation was not engaged in the transaction of business, or had not property within the State which could be reached by attachment, though its head or principal officer may there have had his personal residence, or may have been found there casually, there could not be a valid service of process compelling it to appear ; and without a voluntary appearance, there could be no judgment rendered which would bind or affect it. The period of time at which it must have been engaged in the transaction of business within the State, to authorize a personal action against it, by the service of process on its principal officer, or other agent, was the commencement of the suit. The fact that at some time anterior, the corporation may have been engaged in business, or may have had agents within the State, and though at such time, the contract was made, or the cause of action arose, on which the suit was founded, was not controlling or material. The modification or relaxation of the common law principle was rested upon the theory, that the corporation by entering the State by its agents, engaging in the transaction of its corporate business, gave to itself, ''a species of locality in the nature of a domicile,'' and was presumed to have assented to be sued in the courts of the State, as if it were a domestic corporation.—*Rolling Mill Co. v. Swede Iron Co., supra.; Aldrich v. Anchor C. & D. Co., supra; Ex parte Schollenberger, supra*. As is well observed in *Latimer v. Union Pacific Railway Co.*, 43 Mo. 109 : ''The well established and settled principle is, that to give a court jurisdiction, a real defendant, against whom the plaintiff is entitled to a judgment, must be found and served with process within the limits of the jurisdiction;

or some property or chose in action of his must be found there upon which the court can proceed *in rem*. Every attempt on the part of one nation or State, by its legislature, to grant jurisdiction to its courts over persons or property not within its territory, is regarded elsewhere as mere usurpation ; and all judicial proceedings in virtue thereof are held utterly void." This proceeds upon the known maxim : "*Extra territorium jus dicenti impune non paretur.*" The presence of the corporation by its agents, engaged in the transaction of corporate business, was the essential fact which drew it within the jurisdiction of the courts of a State other than the State of its creation, to entertain a personal action against it. The fact must have existed at the commencement of the suit, or the jurisdiction could not exist. If the fact did not then exist, there could be no legal service of process, and there could be no valid, operative judgment rendered.

It was only by comity, that foreign corporations, not engaged in interstate or foreign commerce, or not the agencies of the national government, were permitted to make contracts and carry on business within this State. The State had the power to exclude them absolutely, or to prescribe the terms and conditions upon which, within its jurisdiction, it was permissible for them to make contracts, or exercise their general powers. The first clause of the section of the constitution which is under consideration, prescribes inflexibly, as the condition upon which a foreign corporation may do business within this State, that it shall have "at least one known place of business and an authorized agent or agents therein." The succeeding clause declares that "such corporation," by which we understand not any and every foreign corporation, but the corporation which has designated for itself "a known place of business and an authorized agent or agents therein," may be sued in any county where it does business.

When the constitution is read in the light of the pre-existing law, we understand what were the defects and mischiefs it is intended to supply and correct; the changes it is intended to make, and the scope and extent of its provisions. By comity, or mere acquiescence, a foreign corporation may not now make contracts from which it can derive rights or benefits, or transact any part of the business for which it was organized. The condition upon

which it may do business, fixed and prescribed by the constitution, is inflexible ; and is unalterable by legislation.—*Farrior v. New Eng. Mort. Sec. Co.*, 88 Ala. 275 ; *New Eng. Mort. Sec. Co. v. Ingram*, 91 Ala. 337 ; *Nelms v. Edinburg American Land Mortgage Co.*, 92 Ala. 157. The corporation having fixed for itself a known place of business, and placed therein authorized agents, thereby gives to itself a locality or domicil, and so long as it continues there to do business, may be sued as a domestic corporation may be sued at its domicil or principal place of business. The liability to suit does not now rest upon the theory that the corporation by sending its agents into the State for the transaction of business, is presumed to consent to be sued here. The assent is expressed in the condition upon which it can legally transact corporate business within the State. It is not the purpose of the constitution to confine the corporation in the transaction of business to the locality or domicil it may designate as its "known place of business." The constitution speaks in recognition of the known fact that the business foreign corporations are created and organized to transact, is varied, entering into nearly all the industries, commerce, and interests of the country. That in the course of the transaction of its business, the corporation would probably send its agents into other counties, beyond "the known place of business" it had designated, for the transaction of such corporate business as was entrusted to them. In such counties, while doing business there, the constitution subjects the corporation to suit, as well as within its domicil, or "known place of business." But it must be observed that the essential fact, upon which the liability to suit in other counties depends, is, that it "*does business*" in such counties ; as the essential fact rendering it liable to a personal action, in the courts of the State, prior to the constitution, was, that it was doing business within the State. The material changes, which the constitution works, are, that the corporation becomes liable to suit in any county in which it does business, and the process may be served, compelling it to appear, upon an agent anywhere in the State. The words of the statute are plain and unambiguous. There is no room for construction or interpretation, or for an inquiry into the policy of the provision, or the motives which it may be supposed induced its adoption.

It speaks of the present, not of the past, or of the future. The words, "does business," are equivalent in meaning, and expressive of the same thought, as the words "doing business." Unless we deflect these words from their plain and usual signification, or import into the constitution words not found there, we are constrained to the conclusion that a foreign corporation having a known place of business in the State, is not subject to a personal action, in a county beyond such place of business, unless, at the time of the commencement of suit, it was doing business in such county, and that it is immaterial that the contract was made, or the cause of action arose, on which the suit is founded, at some past time when the corporation was doing business in such county. There was no purpose to compel a corporation to a continuance of business at a place, because at some time, it had transacted business there; there is not a word found in the constitution which would justify the imputation of such a purpose to its framers. Such a purpose would as illy comport with the principles of natural justice, as a purpose to constrain a natural person to a continuance of a particular occupation, because he once pursued it, or to its continuance in a particular locality, because he had there pursued it. With full knowlege that corporations of necessity, or from mere convenience, are frequently changing their places of business, the provision of the constitution was framed. The hardships or inconveniences which it is supposed may result, if they are not permanently subject to suit in a particular locality, upon causes of action there arising, because they had there transacted business, are the hardships or inconveniences, and no other, which may result if a natural person change the county or State of his residence.

The plea in abatement negatives the fact that the corporation, at the commencement of suit, was doing business in the county of Conecuh, and affirms that it then had in the city of Mobile, a known place of business, and an authorized agent therein. It was not necessary that the plea should negative the fact that the corporation was doing business within the county, when the cause of action arose. That fact is not, within our view, controlling or material; and the court below did not err in overruling the demurrers to the plea.

When a foreign corporation "does business" within the State, of necessity the business is done by and through agents; and the necessity is recognized by the constitution and by the statute. It is not within the purview of either, that the corporate organization, or its head or principal officer, will migrate into the State. The corporation dwells in the sovereignty of its creation, and its organization there remains, as defined and declared by the law from which corporate existence is derived. It is contemplated that in this State, and in more than one of its counties, the corporation may have a visible existence by the presence of agents authorized to act for it, exercising such of its powers as may be entrusted to them; making such contracts and transacting such business as may fall within the scope of the authority conferred. The mere presence of an agent within the State, or within a particular county, authorized to transact particular business, not involving an exercise of the corporate powers or franchises, not a part of the business the corporation was created and organized to transact, is not within the proper meaning of the phrases "do business," or "does business," as employed in the constitution and the statute.—2 Beach on Priv. Corp., §§ 416; 890; *Morgan v. White*, 101 Ind. 413; *Clews v. Woodstock Iron Co.*, 44 Fed. Rep. 31; *Bentlif v. L. & C. F. Co.*, *Ib*. 667; *Carpenter v. Westinghouse Air-Brake Co.*, 32 Fed. Rep. 434; *St. Louis Wire Co. v. Consolidated Barb-Wire Co.*, *Ib*. 802; *U. S. v. American Bell Telephone Co.*, 29 Fed. Rep. 17. In *Beard v. U. & A. Publishing Co.*, 71 Ala. 60, it was decided that the company having an agent in the State to receive subscriptions to the newspaper it was publishing, and to collect such subscriptions, was not doing business in the meaning of the constitution. And it was said: "There must be a doing of some of the works, or an exercise of some of the functions, for which the corporation was created, to bring the case within the clause," referring to the first clause of the 4th section. In *Christian v. American Freehold Land Mortgage Co.*, 89 Ala. 198, it was held, that the prosecution or defense of an action in the courts of the State, is not the doing of business within the meaning of the constitution. And according to all the authorities, construing similar constitutional or statutory provisions, having in view the like objects or purposes, there are many acts of business

a foreign corporation may do, without coming within the constitutional or statutory provision.—2 Mor. Corp., §§ 661-62. The real test is that applied in *Beard v. U. & A. Publishing Co., supra*; is the corporation engaged in the transaction of business, or any part thereof, it was created and organized to transact. If it be, it "does business" within the meaning of the constitution. If it be not—if the act it is doing, or has done, is not within its general powers and franchises—it is not the business to which the constitutional requirement is directed.

When the suit was commenced, the company had an agent or employé in the possession and care of the line of railroad it had constructed in the county of Conecuh, and of the machine it had used in the loading of cars with timber. The railroad and the machine were mere adjuncts or appurtenances to the saw mill it had operated in the county of Escambia. The operation of the mill had been suspended, and the railroad and machine were unemployed. The care and protection of unused property, or the payment of taxes which are a charge upon the property, and the payment of which is essential to the preservation of the title to the owner, can not be deemed the exercise of corporate powers or franchises, nor the transaction of the business, or any part thereof, for which the company was created and organized. These acts did not confer upon the courts of the county jurisdiction to entertain a personal action against the company. That jurisdiction, under the undisputed evidence, pertained only to "the known place of business," the company had designated. We find no error in the instruction given the jury, and the judgment of the circuit court must be affirmed.