(118 So. 508)

**FRIEDLANDER BROS., Inc., v. DEAL et al.**
(4 Div. 363.)

Supreme Court of Alabama.   July 14, 1928.
Rehearing Denied Oct. 25, 1928.

Lee & Tompkins, of Dothan, for appellant.

Mullins & Cotton, O. C. Doster, and O. S. Lewis, all of Dothan, for appellees.

SOMERVILLE, J. The decisive and, indeed, the only question presented by this appeal is whether a foreign mercantile corporation, organized and chartered to do a merchandising business, and authorized to buy, lease, or hold real estate suitable to the purposes of the corporation, may lawfully lease for its intended use in its future business in Alabama a storehouse in Alabama, without first complying with the laws of Alabama imposing certain conditions, requirements, and restrictions upon foreign corporations "before engaging in or transacting any business in this state." Code 1923, §§ 7209–7220. Respondents' contention is that merely leasing a storehouse, under the conditions stated, is engaging in or transacting business within the meaning of our inhibitory statutes.

The statutory phrase "engaging in or transacting any business" does not differ in substance or in meaning from the constitutional phrase "do any business." Const. 1875, art. 14, § 4; Const. 1901, § 232.

The meaning of the phrase to "do any business in this state," as applicable to foreign corporations, was clearly and simply stated by Stone, J., in the often cited case of Beard v. U. & A. Pub. Co., 71 Ala. 60:

"There must be a doing of some of the works, or an exercise of some of the functions, *for which the corporation was created*, to bring the case within that clause. A railroad, bank, or insurance company, of foreign incorporation, performing its *corporate functions* within the limits of Alabama, would be required to keep 'at least one known place of business, and an authorized agent or agents' in this state. That would be doing business; the business, or a

part of it, which falls *directly within* the purview of their corporate powers." (Italics ours.)

In Farrior v. N. E. Mort. Sec. Co., 88 Ala. 275, 278, 7 So. 200, in holding that a loan of money was doing business, it was said:

"In engaging in such a transaction, the complainant was in the exercise of its chief corporate function, as imported by its very name."

In Sullivan v. Sullivan Timber Co., 103 Ala. 371, 379, 15 So. 941, 944 (25 L. R. A. 543), it was said per Brickell, C. J.:

"In Christian v. American Freehold Land Mortgage Co., 89 Ala. 198 [7 So. 427], it was held, that the prosecution or defense of an action in the courts of the state, is not the doing of business within the meaning of the Constitution. And according to all the authorities, construing similar constitutional or statutory provisions, having in view the like objects or purposes, there are many acts of business a foreign corporation may do, without coming within the constitutional or statutory provision. 2 Mor. Corp. §§ 661, 662. The real test is that applied in Beard v. U. & A. Publishing Co. [71 Ala. 60] supra; is the corporation engaged in the transaction of business, or any part thereof, it was created and organized to transact. If it be, it 'does business' within the meaning of the Constitution. If it be not— if the act it is doing, or has done, is not within its general powers and franchises—it is not the business to which the constitutional requirement is directed."

In Int. Cotton Seed Oil Co. v. Wheelock, 124 Ala. 367, 370, 27 So. 517, 518, it was said:

"Not every act done within the corporate powers will constitute the business meant by the statute. [And, after restating the rule laid down in Sullivan v. Sullivan Timber Co. (103 Ala. 371, 15 So. 941, 25 L. R. A. 543) and Beard v. U. & A. Pub. Co. (71 Ala. 60) supra] In applying that test it may not always be easy to distinguish between acts done in the exercise of corporate *functions* and those done merely within corporate *powers*."

Reaffirming the rule of the Beard Case, it was held in State v. Anniston Rolling Mills, 125 Ala. 121, 27 So. 921, that a corporation "organized for the purpose of 'buying, manufacturing and sale of iron, and of articles of merchandise or manufacture in which iron is used, and the buying and selling of such manufactured articles,'" was not "doing business" as a corporation, although it leased its plant, collected the rent and lent some of it at interest, paid taxes, and held directors' meetings and did other acts of corporate concern intended mainly for the protection of its property, all within the state of Alabama. The reason given was that none of these things "constituted a doing of the business or any part of the business for which it was created, and were mere incidents for the preservation of its property."

The principle of the foregoing cases was recognized in Ala. Western R. Co. v. Talley-Bates Const. Co., 162 Ala. 396, 404, 405, 50 So. 341. Most of them were reviewed in F. & G. Cotton Co. v. Baccus, 207 Ala. 75, 92 So. 4, and the principle of the Beard and Sullivan Cases fully approved, with recognition of the important distinction between a merely incidental preliminary step and the doing or transaction of the real business of the corporation.

In Holman v. Durham Buggy Co., 200 Ala. 557, 76 So. 914, we said:

"Our decisions have made it perfectly clear that the mere collection of validly created debts—and, a fortiori, their securement by note or otherwise—though within the general corporate powers, is not the transaction of corporate business within the meaning of our inhibitory laws [citing the Beard and Sullivan and other cases]."

The principle of these cases is in accord with the overwhelming weight of authority elsewhere. 12 R. C. L. 71, § 49; 14a C. J. 1279, 1280, §§ 3986–3989. The text of Corpus Juris, § 3986, states:

"Under the rule that the statutes under consideration have no application to acts done within a state which are merely incidental to the prosecution of its ordinary business, it has been held that where such transactions do not constitute a part of its ordinary business, a foreign corporation is not doing, transacting, carrying on, or engaging in business within a state by the acquisition, holding, or disposal of real or personal property there situated;" or (section 3986) "by the doing of acts therein which are merely preliminary to the transaction of the business for which the corporation is organized."

An excellent and pertinent statement of the rule, and of its principle, is found in General Conference Free Baptists v. Berkey, 156 Cal. 466, 470, 105 P. 411, 413:

"The purposes of the plaintiff, as defined in the articles of incorporation, are 'religious, missionary, educational and charitable.' As incidental to these purposes it is granted a variety of powers, i. e., the power to prosecute and defend suits at law, the power to use a common seal, the power to take and hold for the objects of said corporation any real or personal property, and the power to sell and convey any estate which the interests of the corporation may require to be sold and conveyed. All of these powers are to be exercised in subordination to the main purposes as first declared. The purchase and sale of property by such a corporation is not one of the ends for which it is organized, but is merely a means to enable it to accomplish those ends. Property is to be acquired only for the objects of the corporation, and to be sold only when the interests of the corporation require such sale. The power to sell property by a corporation of this character is as purely incidental to the prosecution of its main purposes as are the other powers enumerated in the charter, as, for example, the power to prosecute and defend suits at law."

So, in Wulfing v. Armstrong Cork Co., 250 Mo. 723, 157 S. W. 615, it was held that a

lease to a foreign corporation of real estate for a local office was not void because made before the company had complied with the statutes authorizing it to "do business" in Missouri. See, also, Meir v. Crossley, 305 Mo. 206, 264 S. W. 882, 35 A. L. R. 611, and note, 625.

We do not overlook the fact that several of the Alabama cases above reviewed relate to doing business within the meaning of the venue laws, but in the particular under discussion here there is no difference in the application of the principle. Nor do we overlook the case of Langston v. Phillips, 206 Ala. 174, 89 So. 523, which involved the validity under our regulatory statutes of a sale by a foreign corporation of its corporate stock to a citizen of Alabama. That such a sale is not within the inhibition of such statutes as a general rule seems to have been settled by the overwhelming weight of authority. See 35 A. L. R. note, 625. We note that in that case apparently the parties had submitted the case upon pleadings and an agreed statement of facts, whereon, to quote from the opinion:

"All else being agreed upon, * * * the issue to be decided was whether the contract for the sale of the stock in question was made in Alabama, or in Delaware, where, of course, the law of this state had no effect."

Finding that the contract was made in Alabama, it was, under the issue as framed, held to be void. Whether the case came within the principle of the Beard Case, supra, and of the later cases following it, cannot be determined from the report of the case, but we presume that the plaintiff corporation did not bring itself within the principle of immunity. For aught that appears, selling the stock may have been a part of the business for which it was incorporated, and it may not have been an incident preliminary to, and in preparation for, the doing of its ordinary business. But, however that may be, the requirements of this case do not demand any criticism of Langston v. Phillips, supra.

The case of Cable Piano Co. v. Estes, 206 Ala. 95, 89 So. 372, is obviously not in point, because the sale of the piano there involved was a part of the corporation's ordinary business, and it was not even suggested that the fact was otherwise. So, also, in Coburn v. Coke, 193 Ala. 364, 69 So. 574, the lending of money by a foreign corporation to a citizen of Alabama was presumptively the ordinary business of the company, nothing to the contrary appearing. And, indeed, upon the face of such a transaction, it could not have been a preparatory incident to some other principal business.

In Muller Mfg. Co. v. First National Bank, 176 Ala. 229, 57 So. 762, it was said that a foreign corporation "is prohibited from doing a single act of business in this state, if done in the exercise of its corporate function"— meaning, of course, the exercise of the func-

tion or business it was organized to do, and not a purely incidental and preparatory act.

We are quite clear to the conclusion that both on principle and authority the complainant's act in securing the lease of this store building in Dothan, in order that it might thereafter engage in its ordinary and chartered business of general merchandising, was not "engaging in or transacting any business in this state" within the meaning of our laws (Code, §§ 7209–7220); and, that, as for that objection, the contract of lease was valid and binding.

We apprehend that the learned trial court was induced to a contrary decision by the language of section 7216 of the Code, "All contracts made in this state by any foreign corporation which has not first complied with the provisions of the two preceding sections, shall, at the option of the other party to the contract, be wholly void;" and of section 7220, "And all contracts, engagements, or undertakings or agreements with, by, or to such corporation, made without obtaining such permit [from the secretary of state under sections 7218 and 7219], shall be null and void."

But the "contracts, undertakings or agreements" therein referred to must be understood in connection with all other and dominate provisions of the statutes preceding, and construed in harmony with their language and general design. They all inhibit "engaging in or transacting any business," and the language quoted means contracts, undertakings or agreements *in the exercise of the corporate function—the ordinary corporate business*—and not to incidental acts not a part of it. This distinction was expressly recognized in Ala. Western R. Co. v. Talley-Bates Const. Co., 162 Ala. 396, 402, 50 So. 341, 342, where it was said:

"The doing of a single act of business, if it be in the exercise of a corporate function, is prohibited."

The same distinction was expressly recognized, in the same language, in Muller Mfg. Co. v. First Nat. Bank, 176 Ala. 229, 231, 57 So. 762; in Holman v. Durham Buggy Co., 200 Ala. 556, 76 So. 914; and more clearly still in F. & G. Cotton Oil Co. v. Baccus, 207 Ala. 75, 77, 92 So. 4. All of these cases were decided long after sections 7218, 7219, and 7220 were incorporated in the Code of 1907, and they are manifestly inconsistent with the theory that those sections make any change in the character of business inhibited.

It results that the trial court erred in sustaining the demurrer to the amended bill of complaint, and also in discharging the temporary injunction. The decree will therefore be reversed, and one will be here rendered, overruling the demurrer and reinstating the injunction according to its original tenor and effect.

Reversed, rendered, and remanded.

GARDNER, THOMAS, and BOULDIN, JJ., concur.

### On Rehearing.

FOSTER, J. Section 7216 of the Code provides that:

"All contracts made in this state by any foreign corporation which has not first complied with the provisions of the two preceding sections, shall, at the option of the other party to the contract, be wholly void."

Section 7220 provides that:

"All contracts, engagements, or undertakings or agreements with, by, or to such corporation, made without obtaining such permit, shall be null and void."

These clauses were also included in the relative sections of the Code of 1907. This provision in section 7216 was also in the Code of 1896, having been enacted February 13, 1893, and amended February 18, 1895 (Acts 1895, p. 1024), in which section 5 provides:

"That all contracts made in this state, after * * * July, 1893, by any corporation which has not * * * complied with the provisions of this act, shall be wholly void."

What is now section 7220 of the Code of 1923 was first enacted March 4, 1907 (Acts 1907, p. 290, § 3), and first appeared in a Code as section 3653 of the Code of 1907. The provision quoted from section 7220 relates to the effect of a failure to obtain a permit, and that quoted from section 7216 relates to the effect of a failure to comply with section 7214, relating to the franchise tax (now provided by the Act of 1927, pp. 181–183), and with section 7215, relating to the failure to file the statement required to be filed with the state tax commission. So that the decisions of this court since 1895 have been rendered with the provision of what is now section 7216 in view, and since 1907 with the provisions of the law as now contained in both sections in view.

In 1899 this court rendered its decision in Cotton Oil Co. v. Wheelock, supra, referred to in the former opinion in this case, reaffirming the construction of the law in the Sullivan and Beard Cases, supra, applying the distinction between an act of business in the exercise of corporate *functions*, and an act in the exercise of corporate *powers*. Again, in 1899, the same distinction is drawn in the case of State v. Anniston Rolling Mills, supra, a suit for the license fee against a foreign corporation for doing business in Alabama.

Then in March, 1907 (Acts 1907, p. 290, § 3), it was enacted as now appears in section 7220 of the Code, hereinabove quoted. In 1909, the Supreme Court rendered the decision in the Talley-Bates Case, supra, without noting any departure from the construction of the law theretofore placed upon the legislative acts. This case did not relate to the question of jurisdiction or venue of the court, but the validity of a contract. In 1912 the Muller Case, supra, was decided, relating to the validity of a contract, and adhering to the same distinction.

In 1917, the decision of this court in the Holman Case, supra, was rendered, in which the distinction is considered and again affirmed, referring to the Sullivan, Beard and other Cases, supra, and also relates to the validity of a contract.

In 1921, this court rendered the decision in the Baccus Case, supra. It is insisted that the Sullivan, Wheelock, and Baccus Cases, supra, relate to a construction of the law relative to venue, or jurisdiction of the court, and have no application here. While they relate to the jurisdiction or venue of the court over foreign corporations, the right to sue a foreign corporation in Alabama depends upon its doing any business in this state (unless it has qualified under the statute). Jefferson Island Salt Co. v. Longyear Co., 210 Ala. 352, 98 So. 119. The transaction of business in Alabama sufficient to give the courts jurisdiction over foreign corporations is held in that case to depend upon the same considerations which determine the inquiry as to whether they are transacting business in violation of the Constitution and laws relating to them as such foreign corporations.

The Code of 1923, with the same provisions, was adopted after this court had rendered its decisions maintaining the construction placed upon the law as to doing business in this state. The adoption of the Code without change in that respect is an adoption of the construction theretofore placed upon the acts.

The question now is not whether the Legislature may enact a law prohibiting the doing of any act within the *powers* of a foreign corporation except on the conditions stipulated, but whether, in view of the history of such enactments, and in the light of the decisions of this court, such was done by the Legislature. We think the construction placed upon the enactments is firmly fixed, and that it ought not now be disturbed by court decision, even if we were inclined to do so.

The application for rehearing is therefore overruled and denied.