This Court granted Lanny S. Vines's petition for permission to appeal from the trial court's denial of his motion for a summary judgment against Romar Beach, Inc. ("RBI"), in this case involving the statutory right of redemption.
The dispositive issue is whether RBI, a foreign corporation not qualified to do business in the State of Alabama, may enforce a right of redemption gained by it through assignments from qualified Alabama businesses.
Vines purchased coastal property in Baldwin County from the mortgagee of Gulf Sands, Inc. ("Gulf Sands"), at a public foreclosure sale on June 29, 1993.[1] Pleasure Island Sewer Service, Inc. ("Pleasure Island"), an Alabama corporation, and J. Harold Nichols, an Alabama citizen doing business as Nichols Associates, Architects ("Nichols"), were judgment creditors of Gulf Sands. After Vines purchased the property, Pleasure Island and Nichols entered into an agreement with David Brannen, a Florida resident. They agreed that Brannen would form a corporation to acquire the property and that Pleasure Island and Nichols would retain the right to develop the property after it was acquired in the future.
On June 16, 1994, Brannen incorporated RBI in Florida. Within hours of its incorporation, RBI entered into separate contracts with Pleasure Island and Nichols, whereby Pleasure Island and Nichols assigned their statutory rights of redemption of the property to RBI. The contracts also provided for RBI's future involvement in the development of the property. Both contracts provided that they were to be governed by Alabama law. The contracts afforded RBI the right to redeem the property for an amount no greater than $510,000 and stated that, should Vines not convey the property to RBI, RBI would sue him. Later, RBI attempted to redeem, but Vines refused.
RBI then sued Vines, seeking to redeem the property and alleging that it was the assignee of the right of redemption. Vines moved for a summary judgment, claiming that RBI was not entitled to redeem the property, because it was a foreign corporation not qualified to do business in Alabama, and because it was relying on the assignment contracts, which were to be performed in Alabama. The trial court denied Vines's summary judgment motion, and this Court granted Vines's petition for permission to appeal from that interlocutory order. See Rule 5, Ala.R.App.P.
The State of Alabama requires foreign corporations to qualify to do business in this State before conducting business here. Article XII, § 232, Constitution of Alabama 1901, states, in pertinent part:
 "No foreign corporation shall do business in this state without having at least one known place of business and an authorized agent or agents therein, and without filing with the secretary of state a certified copy of its articles of incorporation or association."[2]
Ala. Code 1975, § 10-2A-247(a), repealed by Acts 1994, No. 94-245, p. 457, § 3, was effective until January 1, 1995; therefore, it governs the transactions in this case. That section states:
 "All contracts or agreements made or entered into in this state by foreign corporations which have not obtained a certificate of authority to transact business in this state shall be held void at the action of such foreign corporation or any person claiming through or under such foreign corporation by virtue of said void contract or agreement. . . ."
These laws must be enforced when the business conducted in Alabama by the nonqualified corporation is intrastate in nature. Kentucky *Page 903 Galvanizing Co. v. Continental Cas. Co., 335 So.2d 649 (Ala. 1976); First Inv. Co. v. McLeod, 363 So.2d 774 (Ala.Civ.App. 1978). We also note that § 10-2A-247(a) applies to contracts that are executed in other states but that are to be fulfilled in Alabama. Citizens' Nat'l Bank v. Bucheit, 14 Ala. App. 511,71 So. 82 (1916); Sanwa Business Credit Corp. v. G.B. "Boots"Smith Corp., 548 So.2d 1336 (Ala. 1989).
Of course, for a business to be governed by Alabama's business qualification laws, it must be engaging in business in Alabama. For purposes of these laws, we distinguish between acts taken in the exercise of the corporate function, i.e., acts taken in performance of the ordinary corporate business, and incidental acts not a part of that business. As stated by this Court in Alabama Western R.R. v. Talley-Bates Constr. Co.,162 Ala. 396, 402, 50 So. 341, 342 (1909), "The doing of a single act of business, if it be in the exercise of a corporate function, is prohibited."
In Friedlander Bros. v. Deal, 218 Ala. 245, 118 So. 508
(1928), the Court thoroughly reviewed the caselaw on this issue. The Friedlander Court stated that nonqualified foreign corporations are " 'prohibited from doing a single act of business in this state, if done in the exercise of its corporate function' — meaning, of course, the exercise of the function or business it was organized to do, and not a purely incidental and preparatory act." 218 Ala. at 248,118 So. at 511, quoting Muller Mfg. Co. v. First Nat'l Bank, 176 Ala. 229,57 So. 762 (1912). The Friedlander Court acknowledged "the important distinction between a merely incidental preliminary step and the doing or transaction of the real business of the corporation." 218 Ala. at 247, 118 So. at 510. It quotedSullivan v. Sullivan Timber Co., 103 Ala. 371, 379, 15 So. 941,944, 25 L.R.A. 543 (1894), in stating:
 " 'The real test [to be applied is:] is the corporation engaged in the transaction of business, or any part thereof, it was created and organized to transact[?] If it be, it "does business" within the meaning of the Constitution. If it be not — if the act it is doing, or has done, is not within its general powers and franchises — it is not the business to which the constitutional requirement is directed.' "
218 Ala. at 247, 118 So. at 510.
In Friedlander, the Court held that a foreign mercantile corporation's lease of a storehouse in Alabama without first qualifying to do business in this state fell outside the business qualification prohibitions. The Court found that the corporation leased the storehouse "in order that it might thereafter engage in its ordinary and chartered business of general merchandising," and held that this was not business conducted by a nonqualified corporation in opposition to the laws of this State. 218 Ala. at 248, 118 So. at 511. TheFriedlander Court interpreted the lease as being an incidental act, distinct from the ordinary corporate function and business. The trial court in the instant case denied Vines's motion for a summary judgment on the authority of this Court's holding in Friedlander.
After reviewing the record and the applicable caselaw, we hold that RBI, as a foreign corporation not qualified to do business in Alabama, may not invoke the protection of our state courts to enforce its assigned right of redemption. RBI was fulfilling the purpose for which it was created when it obtained Pleasure Island and Nichols's redemption rights and attempted to redeem the property. This was the exercise of RBI's corporate function — "the exercise of the function or business it was organized to do, and not a purely incidental and preparatory act." Friedlander, supra. RBI was organized to redeem the property, and, after its incorporation, RBI immediately took measures to redeem the property in accordance with the Pleasure Island and Nichols contracts. When Vines refused to convey the property, RBI filed this lawsuit; as noted above, it was obligated to do so pursuant to the contracts with Pleasure Island and Nichols. RBI offered no more than $510,000 for the redemption, the highest redemption amount allowed by the contracts. Our finding that RBI's actions were not mere incidental steps toward doing business is supported by the testimony of Brannen, who, as noted above, incorporated RBI, and who stated *Page 904 
the following regarding that incorporation:
 "Q. And what was the purpose of incorporating [RBI]?
"A. To acquire this property.
 "Q. And that's the only thing this corporation's ever done, isn't it, or attempted to do?
"A. That's what it's attempted to do, yes.
 "Q. This corporation's never bought another piece of property, never sold another piece of property, never leased another piece of property, never rented another piece of property, or never has done any kind of business, has it, other than attempt to redeem this property about which we are here today?
"[Objection to form.]
"A. That's correct.
". . . .
 "Q. . . . What kind of business is [RBI] engaged in, other than what you've told us?
"[Objection to form.]
 "A. It's basically a real estate investment or development company, but, you know, right now it's got no business."
Because RBI's actions constituted doing business in Alabama for purposes of Ala. Code 1975, § 10-2A-247(a), its failure to qualify before doing so on or before the date the contracts in question were executed precludes it from enforcing the redemption right it obtained in those contracts from Pleasure Island and Nichols. The redemption rights were dependent upon, and arose from, the Pleasure Island and Nichols contracts, which RBI executed without properly qualifying to do business in Alabama. RBI would not have been able to redeem the property without first establishing that its right of redemption was obtained from the Pleasure Island and Nichols contracts, which contemplated RBI's doing business in Alabama as its primary reason for coming into existence. Vines, due to his interest in the property in question, has standing to raise the business qualification laws as a defense to this redemption action. Privity of contract is not required for one to invoke the business qualification laws. See C C Products, Inc. v.Premier Industrial Corp., 290 Ala. 179, 275 So.2d 124 (1972).
The trial court erred in denying Vines's motion for a summary judgment in this case. Therefore, the trial court's order denying the summary judgment is reversed, and the cause is remanded for proceedings or the entry of an order consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and ALMON, HOUSTON, INGRAM, and BUTTS, JJ., concur.
[1] A business partner of Vines, K.C. Chiang, held an interest in the property, but Vines purchased Chiang's interest after the trial court's order; therefore, Vines is the sole appellant. For the purposes of clarity, only Vines will be referred to as the purchaser of the property.
[2] Section 232 was amended on April 1, 1988, by Amendment No. 473, but the portion quoted above remains intact.