**LEGION INSURANCE COMPANY,**
Plaintiff,

v.

**GARNER INSURANCE AGENCY, INC., Quentin P. (Garner) Umphrey, Ray Wadkins and Jack Jeffcoat, Defendants.**

No. 96–D–1564–S.

United States District Court,
M.D. Alabama,
Southern Division.

Sept. 12, 1997.

Wade B. Baxley, Dothan, AL, Charles M. Crook, Montgomery, AL, Paul W. Burke, Atlanta, GA, for Plaintiff.

Matthew C. Lamere, Dothan, AL, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

DE MENT, District Judge.

Before the court is Defendant Ray Wadkins' Motion To Dismiss filed November 27, 1996. Plaintiff filed a response on December 20, 1996. Wadkins filed a brief in support of his motion on January 17, 1997, to which Plaintiff filed a response on February 3, 1997. Wadkins filed a reply to Plaintiff's response on February 12, 1997.

### JURISDICTION

The court properly exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity). The parties do not contest personal jurisdiction or venue.

### OVERVIEW

Plaintiff Legion Insurance company ("Legion") entered into a "Brokerage Agreement" with Defendant Garner Insurance Agency, Inc. ("Garner") on or about June 1, 1994. Pl.'s Compl. ¶ 6; Wadkins' Answer at ¶ 6. Defendant Ray Wadkins ("Wadkins") was the vice-president of Garner during the

times·material to Legion's complaint. Wadkins' Answer ¶ 2. The Brokerage Agreement required Garner to remit all premiums due on Legion insurance sold by Garner regardless of whether the premiums were actually collected or not. *Id.* ¶ 6. Legion alleges that the Defendants have failed to remit and pay over certain insurance premiums as required by the Brokerage Agreement. Moreover, Legion alleges that in some cases, Garner has in fact received and collected insurance premiums from the insureds, but has nevertheless failed to remit these premiums. *Id.* at 7.

In his Answer and Motion To Dismiss, Wadkins alleges that Legion fails to state a claim upon which relief can be granted. Wadkins contends that under § 10–2A–247, Alabama Code 1975, all contracts entered into in Alabama by foreign corporations operating without a certificate of authority from the Secretary of State are void if the foreign corporation brings an action to enforce the contract.[1] Wadkins' Mot. To Dismiss ¶ 3. Wadkins argues that at the time the Brokerage Agreement was made, Legion did not possess a Certificate of Authority from the Secretary of State to conduct business as a foreign corporation in Alabama. Wadkins' Answer ¶¶ 9, 11. In support of this allegation, Wadkins offers a certificate, signed by the Alabama Secretary of State on November 15, 1996, stating that there is no record of a corporation by the name of Legion Insurance Company in the foreign or domestic corporation records on file.[2] Wadkins' Mot. To Dismiss, Exhibit B. Therefore, Wadkins argues, because Legion was not authorized to do business in Alabama, the Brokerage Agreement was void and unenforceable. *Id.* ¶ 11.

Legion responds by pointing out that for § 10–2A–247 to be applicable, a foreign corporation must be engaged in the transaction of business within the state. Pl.'s Resp. To Wadkins' Mot. To Dismiss ¶ 1. Legion contends that when a foreign corporation conducts activities that are interstate in nature and not intrastate, the Commerce Clause of the United States Constitution protects its business activities in Alabama and § 10–2A–247 is inapplicable. *Id.* ¶ 3. Legion states that at the time this action accrued, it "was not doing or transacting the real business of the corporation, but was merely embarking upon an incidental preliminary step toward transacting the real business of the corporation." *Id.* ¶ 2. Therefore, Legion concludes that § 10–2A–247 does not void its contract with Wadkins.

## STANDARD OF REVIEW

When ruling on a motion to dismiss for failure to state a claim, the court must assume that the factual allegations in the complaint are true. *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); Fed.R.Civ.P. 12(b)(6). Assuming that the facts are true, a complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) only "if it is clear that no relief could be granted" under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## DISCUSSION

Section 10–2A–247 bars foreign corporations not qualified to do business in Alabama from enforcing their contracts in Alabama courts.[3] Ala.Code. § 10–2A–247

---

**1.** Although § 10–2A–247, Alabama Code 1975, was repealed by Acts 1994, No. 94–245, p. 457, § 3, effective at 12:01 a.m. on January 1, 1995, the parties agree and the court finds that Ala. Code § 10–2A–247 (1975) applies in this action. Wadkins' Mot. To Dismiss ¶ 3; Legions Resp. To Def.'s Mot. To Dismiss ¶ 1; Legion's Br. In Supp. Of Its Resp. To Def.'s Mot. To Dismiss at 3. *See also Phenix City–Cobb Hosp. Auth., Inc. v. Sun Pointe Property, Inc.,* 689 So.2d 797, 798 (Ala.1997)(applying § 10–2A–247 to a contract entered into prior to January 1, 1995). Section 10–2A–247 provides in pertinent part:

> All contracts or agreements made or entered into in this state by foreign corporations which

have not obtained a certificate of authority to transact business in this state shall be held void at the action of such foreign corporation or any person claiming through or under such foreign corporation by virtue of said void contract or agreement; but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity....

Ala.Code § 10–2A–247 (1975).

**2.** Legion does not contest this allegation.

**3.** This bar compromises "substantive" state law which federal courts must apply in diversity actions such as the case at hand. *Aim Leasing*

(1975); *Stewart Mach. and Eng'g Co., Inc. v. Checkers Drive In Restaurants of N. Am.*, 575 So.2d 1072, 1074 (Ala.1991). Application of the statute is limited to those cases in which the action is ex contracts as opposed to ex *delicto*. *Burnett v. National Stonehenge Corp.*, 694 So.2d 1276, 1279 (Ala.1997); *Freeman Webb Invs., Inc. v. Hale*, 536 So.2d 30, 31 (Ala.1988); *First Bank of Russell County v. Wells*, 358 So.2d 435, 437 (Ala.1978) (quoting *Jones v. Americar, Inc.*, 283 Ala. 638, 219 So.2d 893, 896 (1969)). In other words, the statute only bars the claims of an unqualified foreign corporation seeking to enforce rights derived directly from its contract where the actions complained of entailed the failure to perform a contractual obligation. *Al Sarena Mines, Inc. v. SouthTrust Bank of Mobile*, 548 So.2d 1356 (Ala.1989); *Hale*, 536 So.2d 30 (Ala.1988). But, businesses engaged in interstate commerce are protected by the Commerce Clause of the United States Constitution, and are immune from the "harsh" effects of § 10–2A–247. *Stewart Mach.*, 575 So.2d at 1074; *Johnson v. MPL Leasing Corp.*, 441 So.2d 904 (Ala.1983). Courts must look to the facts of each case to determine whether the contract involves inter or intrastate commerce. *Stewart Mach.*, 575 So.2d at 1074; *Green Tree Acceptance, Inc. v. Blalock*, 525 So.2d 1366, 1370 (Ala.1988). However, the statute is penal in nature and in derogation of the common law and thus is to be strictly construed. *Aim Leasing*, 687 F.2d at 358; *Wells*, 358 So.2d at 437.

"Alabama courts will not enforce a foreign corporation's contract if (1) at the time the contract was entered into, the foreign corporation had not been qualified by the secretary of state to do business in Alabama, and (2) the foreign corporation was doing business of an intrastate nature in Alabama pursuant to the contract." *S & H Contractors*, 906 F.2d at 1510 (citing *Sanwa Business Credit Corp. v. G.B. "Boots" Smith Corp.*, 548 So.2d 1336, 1337 (Ala.1989)). It is undisputed that Legion was not qualified to do business in Alabama at the time the contract was entered into. Therefore, the court must determine whether Legion was (1) doing business, (2) of an intrastate nature in Alabama pursuant to the Brokerage Agreement.

## I. Legion Was "Doing Business" in Alabama

■ In *Vines v. Romar Beach, Inc.*, 670 So.2d 901 (Ala.1995), the Supreme Court of Alabama distinguished between acts undertaken in performance of ordinary corporate business and incidental acts not part of that business. It noted that "[t]he doing of a single act of business, if it be in the exercise of a corporate function, is prohibited." *Id.* (citations omitted). Citing to *Friedlander Bros. v. Deal*, 218 Ala. 245, 118 So. 508 (1928), the *Vines* Court defined "exercise of a corporate function" as "the exercise of the function or business it was organized to do, and not a purely incidental and preparatory act." *Vines*, 670 So.2d at 903. The test was:

> [I]s the corporation engaged in the transaction of business, or any part thereof, it was created and organized to transact[?] If it be, it "does business" within the meaning of the Constitution. If it be not—if the act it is doing, or has done, is not within its general powers and franchises—it is not the business to which the constitutional requirement is directed.[4]

*Vines*, 670 So.2d at 903 (citations omitted).

Legion argues that it is in the business of providing insurance coverage and that by

---

Corp. v. Helicopter Med. Evacuation Inc., 687 F.2d 354 (11th Cir.1982); M & R Constr. v. National Homes Corp., 286 F.2d 638 (5th Cir. 1961); Hughes Assoc., Inc. v. Printed Circuit Corp., 631 F.Supp. 851 (N.D.Ala.1986).

4. Although the quoted passage addresses the "Constitution," a close reading of *Vines* indicates that both the *Vines* Court and the *Friedlander* Court it was quoting intended the language to apply to § 10–2A–247. Prior to quoting *Friedlander*, the *Vines* Court quoted Article XII, § 232, Constitution of Alabama 1901, which states in pertinent part:

> No foreign corporation shall do business in this state without having at least one known place of business and an authorized agent or agents therein, and without filing with the secretary of state a certified copy of its articles of incorporation or association.

After then quoting § 10–2A–247, the *Vines* Court went on to discuss the *Friedlander* Court's "[thorough review of] the case law on this issue." *Vines*, 670 So.2d at 903. *See also S & H Contractors*, 906 F.2d at 1509 (recognizing that Article XII, § 232 of the Alabama constitution is enforced via § 10–2A–247).

entering into the Brokerage Agreement with Garner it was merely taking an incidental step toward doing business. Pl.'s Br. In Supp. Of Its Resp. To Wadkins' Mot. To Dismiss at 5; Pl.'s Br. In Resp. To Wadkins' Br. In Supp. Of His Mot. To Dismiss at 4. However, Wadkins contends that Legion sold a program of workmen's compensation insurance to Choice Systems, Inc., through Garner, at least two months prior to the finalization of the Brokerage Agreement. Wadkins' Br. In Supp. Of His Not. To Dismiss at 3. Wadkins also contends that Legion received and deposited two checks totaling $71,094.17 as payment for premiums on the insurance sold to Choice Systems. *Id.* at 1–2.

What vitiates Legion's arguments is that it admits, and the evidence shows that it entered into the Brokerage· Agreement with Garner, *see* Legion's Compl. ¶ 6; Legion's Br. In Resp. To Wadkins' Br. In Supp. Of His Mot. To Dismiss at 4, and nowhere in it's pleading does it address the checks issued by Garner which it deposited. It's only argument is that execution of the Brokerage Agreement was not an exercise of its corporate function but mere incidental activity. Legions' Br. In Supp. Of Its Resp. To Wadkin's Mot. To Dismiss at 5; Legion's Br. In Resp. To Wadkins' Br. In Supp. Of His Mot. To Dismiss at 4.

The Brokerage Agreement and Addendum were both executed on August 8, 1994 by Legion and on August 17, 1994 by Garner. This contract formalized Legion's agreement with Garner effective June 1, 1994. *See* Wadkins' Br. In Supp. Of His Not. To Dismiss, Exhibit C. In fact, an August 8, 1994, letter on Legion's letterhead, addressed to Mr. Umphrey at Garner, references "Master Brokerage Agreement and Addendum A–1 Choice Systems (6/1/94 – 6/1/95)." The letter goes on to state that "[i]n order to formalize Legion's agreement with Garner Insurance Agency, Inc., enclosed are two (2) original copies of the Master Brokerage Agreement and Addendum A–1 covering the above-mentioned program. Please review the Agree-

ment and have both copies signed on behalf of Garner...." *Id.*, Exhibit D. The Brokerage Agreement and Addendum were signed August 17, 1994 by Garner Humphrey as President of Garner. *Id.*, Exhibit C.

In addition to the executed contract, Wadkins produced photocopies of two canceled checks totaling $71,094.17 issued by Garner and payable to Legion. The first check, issued June 1, 1994 and deposited on June 3, 1994 states "# 105052 Choice Systems W/C." The second ·check was dated July 15, 1994 and deposited July 27, 1994.[5] Both contain the imprint "For Deposit Only Legion Insurance Company." Wadkins' Br. in Supp. Of His Not. To Dismiss, Exhibits A and B. As noted, Legion does not refute Wadkins' contention that these checks were in payment for premiums for a program of worker's compensation insurance sold, by Legion through Garner, to Choice System, Inc. *Id.* at 3. Accordingly, the court finds that Legion was "doing business" in Alabama.

## II. *Legion's Activities Were Of An "Interstate" Nature*

■ The Alabama Supreme Court has not addressed the question of whether the sale of insurance by a foreign corporation through a broker located in the State of Alabama is inter or intrastate commerce for purposes of § 10–2A–247. But the Court has stated that a foreign corporation conducts intrastate business in Alabama when there is:

> [S]ome activity on the part of the nonqualified foreign corporation to establish a continuing presence in the state over and above the mere shipping of commodities between the states. It is axiomatic that "a transaction involving no more than a sale, transportation and delivery of out-of-state goods by a nonresident to a local party on orders taken in Alabama would be an act of interstate commerce to which the laws of this state are not and could not be applicable."

**5.** Even when the court construes all of Legion's factual allegations as true, Legion has not provided any evidence or even an assertion in any of it's pleadings refuting the fact that it received the checks from Garner in payment for premiums on workmen's compensation insurance sold to Choice Systems, Inc. Even when construing the checks in a light most favorable to Legion, the first check, issued June 1, 1994 and deposited by Legion on June 3, 1994 bears the less than cryptic statement "# 105052 Choice Systems W/C."

*Wise v. Grumman Credit Corp.*, 603 So.2d 952 (Ala.1992) (quoting *Loudonville Mill Co. v. Davis*, 251 Ala. 459, 37 So.2d 659 (1948)).

From Legion's perspective, their activities are interstate in nature. Legion, a non-Alabama corporation, sells insurance to Alabama customers through a broker, Garner. Legion mails its insurance contracts to Garner across state lines and premium payments are remitted to Legion across state lines. Legion merely utilizes Garner to distribute its product. Pl.'s Br. In Resp. To Wadkins Br. In Supp. Of His Mot. To Dismiss at 7. From Wadkins' perspective, Legion has established a continuing presence in Alabama, thus placing it within the purview of § 10–2A–247. Wadkins' Br. In Supp. Of His Mot. To Dismiss at 4–5. The sale of insurance does not simply entail delivering a written policy to the insured "never to be heard from or dealt with again," but also entails investigation, evaluation and litigation of claims arising in Alabama. *Id.* at 5. Wadkins also contends that by enacting legislation regulating workmen's compensation insurance, the Alabama legislature "considers the business of selling and providing workmen's compensation to be an intrastate matter subject to regulation of the state." *Id.* (citing Ala.Code Title 25 (1975)).

Although the parties attempt to analogize the case at bar to cases holding the activities of foreign corporations to be intrastate or interstate in nature, the court notes that the United States Supreme Court has held that the sale of insurance is commerce of an interstate nature. In *United States v. South–Eastern Underwriters Ass'n*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944) the Court found that Congress had the power to regulate insurance transactions through the Commerce Clause. *Id.* at 553. The Alabama Supreme Court acknowledged this ruling in *Glass v. Prudential Ins. Co. of Am.*, 246 Ala. 579, 22 So.2d 13, 14 (1945): "insurance companies which conduct a substantial part of their business transaction across state lines are engaged in commerce among the several states and subject to regulation by Congress under the Commerce Clause."

Legion cites *North Alabama Marine, Inc. v. Sea Ray Boats, Inc.*, 533 So.2d 598 (Ala.1988) for the proposition that its activities were interstate in nature. In *North Ala. Marine*, the foreign corporation was a boat manufacturer that brought suit to enforce a contract entered into with one of its dealers in Alabama. *Id.* at 600. The dealer asserted that § 10–2A–247 precluded the suit because the boat manufacturer was engaged in intrastate business. *Id.* The Court held that even though the dealer was engaged in intrastate commerce, the manufacturer was engaged in interstate commerce and thus exempt from the statute. *Id.* at 601. In the case at bar, Legion supplied the insurance coverage produced by Garner's sales in Alabama. Legion's conduct is analogous to the manufacturers conduct in *North Ala. Marine*, and therefore is interstate in nature. Accordingly, the court finds that although Legion was "doing business" in Alabama, its activities were sufficiently interstate in nature so as to preclude application of § 10–2A–247. Alternatively, the court finds that even if Legion's activities are classified as "intrastate" in nature, application of § 10–2A–247 on the facts of this case would impermissibly burden interstate commerce.[6]

## CONCLUSION

Therefore, based on the foregoing, it is CONSIDERED and ORDERED that Wadkins' Motion To Dismiss be and the same is hereby DENIED.

---

**6.** In *Aim Leasing Corp. v. Helicopter Med. Evacuation Inc.*, 687 F.2d 354 (11th Cir.1982), the Eleventh Circuit articulated a two-step inquiry to be utilized when addressing disputes arising under § 10–2A–247: (1) is the foreign corporation doing business in Alabama, and (2) if so, does the application of Alabama law under the circumstances of the case impede interstate commerce in violation of the Commerce Clause of the Constitution. *Id.* at 357. *See also S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1509 (11th Cir.1990) (applying *Aim Leasing*'s two-step analysis). The intrastate aspect of Legion's activities in the case at bar were "essential element[s]" of an interstate transaction, and application of § 10–2A–247 would impermissible burden the interstate nature of those activities. *S & H Contractors*, 906 F.2d at 1511.