[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 55 
On February 1, 1999, Raymond Boles and Larry D. Walker executed a "Commercial Promissory Note and Security Agreement" ("the promissory note") payable in the amount of $30,112.50 plus interest to Colonial Bank. The promissory note listed Alabama addresses for all of the parties and listed three used vehicles as the specific collateral securing the indebtedness. The promissory note also stated that it was governed by Alabama law. Thereafter, Boles and Walker defaulted on the payment obligations under the promissory note. Walker filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Alabama, Northern Division, and was discharged from any liability on the promissory note, leaving Boles solely responsible for the payment of the promissory note.
In May 2004, Casa Investments Company ("Casa"), as assignee of Colonial Bank, filed a complaint against Boles in the trial court alleging breach of contract and seeking payment of the outstanding principal amount of the promissory note, interest, a reasonable attorney fee, and costs. Casa attached a copy of the promissory note to its complaint.
Boles, proceeding pro se, answered and denied the allegations in the complaint. Thereafter, Boles obtained legal counsel and amended his answer to allege that he was not indebted to Casa or its assignor, Colonial Bank; that Casa, or Colonial Bank, had failed to notify him of the sale of the collateral securing the indebtedness; and that Casa, or Colonial Bank, had failed to sell that collateral in a commercially reasonable manner.
Casa filed a motion for a summary judgment pursuant to Rule 56(c), Ala. R. Civ. P., asserting that there was no genuine issue of material fact and that it was entitled to a judgment as a matter of law. In support of its motion, Casa filed a copy of the promissory note and an affidavit of Ronald W. Cadle, president of Casa. In his affidavit, Cadle stated, among other things, that Casa was located in Ohio and that Colonial Bank had sold and assigned the promissory note to Casa on or about November 19, 2002.
Boles filed a motion in opposition to Casa's summary judgment motion. In support of his opposition to the summary judgment motion, Boles filed his own affidavit stating, among other things, that Colonial Bank had never attempted to collect *Page 56 
on the promissory note; that Colonial Bank had failed to dispose of the collateral in a commercially reasonable manner and had failed to give Boles notice of the sale of the collateral; and that Colonial Bank had failed to properly credit payments on the indebtedness.
After the parties had conducted some discovery, Boles filed a motion styled "Motion to Dismiss Complaint or Alternatively [Boles's] Amended Answer Setting Out Affirmative Defenses." In his motion, Boles asserted that the action should be dismissed because Casa was an Ohio corporation that had failed to obtain a certificate of authority to do business in the State of Alabama pursuant to § 10-2B-15.01 et seq., Ala. Code 1975. In support of his motion, Boles filed, among other things, a copy of the "Assignment of Note and Lien(s)" ("the assignment") executed by Colonial Bank to Casa reflecting that Casa was an Ohio corporation,[1] and a "certificate of non existence" from the Secretary of State of Alabama stating that "after a diligent search of the . . . corporate records on file in this office . . .no record is found to exist of any entity by the name: CasaInvestments Company." (Emphasis in original.) It is undisputed that Casa is not qualified to do business in the State of Alabama.
Casa filed a motion styled "Submission in Opposition to Motion to Dismiss and to Strike Affirmative Defense of [Boles]." In support of its motion, Casa filed another affidavit of Cadle. In his affidavit, Cadle stated in relevant part:
 "2. Casa . . . maintains no offices or employees or agents within the State of Alabama, nor has it in the past.
 "3. The [a]ssignment . . . attached to [Boles's] [m]otion to [d]ismiss is an accurate copy of the assignment. . . . I have also attached a copy of a Limited Power of Attorney given by Colonial Bank to the undersigned, and certain other employees of Casa. . . .
 "4. The [a]ssignment . . . involved in this case occurred in . . . Ohio, as evidenced by the [a]ssignment and its acknowledgment.
 "5. All contact between [Boles] and [Casa] has, prior to the institution of the collection activities by the attorney for [Casa], occurred via interstate commerce, either via the United States Mail, other delivery services, or long distance telephone, all originating in Ohio.
 "6. Casa . . . does not now, nor has it engaged in transacting any business with the State of Alabama."
The limited power of attorney referred to in Cadle's affidavit reflected that Colonial Bank is an Alabama corporation.[2]
On April 26, 2005, the trial court entered a judgment granting Boles's "motion to dismiss" and denying Casa's motion for a summary judgment due to the "dismissal" of the action; that judgment was entered on the case action summary. On May 23, 2005, Casa filed a "motion to reconsider," and on June 3, 2005, Casa filed a notice of appeal. On June 13, 2005, the trial court entered a notation on the case action summary stating that, because the case was on *Page 57 
appeal, it no longer had jurisdiction to consider Casa's postjudgment motion.
Although the trial court characterizes its April 26, 2005, judgment as one granting a motion to dismiss, because both sides submitted supporting evidentiary materials and the trial court did not expressly exclude consideration of those evidentiary materials the motion is properly treated as one for a summary judgment. See Rule 12(c), Ala. R. Civ. P.; see generallyAmerican Trust Corp. v. Champion, 793 So.2d 811, 813
(Ala.Civ.App. 2001) ("When a trial court considers matters outside the pleadings in ruling on a defendant's motion to dismiss filed pursuant to Rule 12(b)(6) . . ., the motion is converted into a motion for a summary judgment."); and Andersonv. Amberson, 905 So.2d 811, 812 (Ala.Civ.App. 2004) ("`"[W]here matters outside the pleadings are considered on a motion to dismiss, the motion is converted into a motion for summary judgment . . . regardless of its denomination and treatment by the trial court."'" (quoting Phillips v. AmSouth Bank,833 So.2d 29, 31 (Ala. 2002), quoting in turn Boles v. Blackstock,484 So.2d 1077, 1079 (Ala. 1986))).
This court reviews a summary judgment de novo. Ex parteBallew, 771 So.2d 1040 (Ala. 2000).
 "A summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.; Bussey v. John Deere Co., 531 So.2d 860 (Ala. 1988). `When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present "substantial evidence" creating a genuine issue of material fact.' Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala. 1999). `[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). In reviewing a summary judgment, this court must review the record in a light most favorable to the nonmoving party and must resolve all reasonable doubts concerning the existence of a genuine issue of material fact against the moving party. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990)."
Bain v. Gray, 835 So.2d 1034, 1037 (Ala.Civ.App. 2002).
Casa contends that it was not necessary for it to qualify to do business in the State of Alabama to avail itself of Alabama courts to bring this collection action because, it maintains, it was engaging in interstate commerce as opposed to intrastate commerce.
Pursuant to § 10-2B-15.01(a), Ala. Code 1975, "[a] foreign corporation may not transact business in this state until it obtains a certificate of authority from the Secretary of State." Further, § 10-2B-15.02(a), Ala. Code 1975, sometimes referred to as "the door-closing statute," provides:
 "A foreign corporation transacting business in this state without a certificate of authority or without complying with Chapter 14A of Title 40 may not maintain a proceeding in this state without a certificate of authority. All contracts or agreements made or entered into in this state by foreign corporations prior to obtaining a certificate of authority to transact business in this state shall be held void at the action of the foreign corporation or by any person claiming through or under the foreign corporation by virtue of the contract or agreement; *Page 58 
but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity."
Thus, §§ 10-2B-15.01(a) and 10-2B-15.02(a) "bar nonqualified foreign corporations from enforcing contracts in Alabama courts."J.W. Hartlein Constr. Co. v. Seacrest Assocs., L.L.C.,749 So.2d 459, 461-62 (Ala.Civ.App. 1999). Section 10-2B-15.02(a) "applies to contracts that are executed in other states but that are to be fulfilled in Alabama." Vines v. Romar Beach, Inc.,670 So.2d 901, 903 (Ala. 1995).
The party asserting the nonqualification defense has the burden of proof on the issue. Kyle v. Central Nat'l Bank,226 Ala. 257, 146 So. 801 (1933). Once a party presents evidence establishing that a corporation is a nonqualified corporation, the burden shifts to the nonqualified corporation to present evidence establishing that it is exempt from § 10-2B-15.02(a). A nonqualified corporation establishes that it is exempt from §10-2B-15.02(a) by showing that its activities are interstate as opposed to intrastate. J.W. Hartlein Constr. Co.,749 So.2d at 462. In J.W. Hartlein Construction Co., this court stated:
 "[I]f the nonqualified corporation's activities are considered `interstate' rather than `intrastate,' the corporation is protected from the requirements of [§§ 10-2B-15.01(a) and 10-2B-15.02(a)] by the Commerce Clause of the United States Constitution. Allstate Leasing Corp. v. Scroggins, 541 So.2d 17
(Ala.Civ.App. 1989) (citing Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366 (Ala. 1988))."
749 So.2d at 462.
Foreign corporations whose activities in Alabama are merely incidental to a transaction of interstate business are immune from the effect of the door-closing statute. North AlabamaMarine, Inc. v. Sea Ray Boats, Inc., 533 So.2d 598 (Ala. 1988). While an isolated transaction pursuant to the corporate function of a foreign corporation may constitute doing business under the door-closing statute, Alabama Western R. Co. v. Talley-BatesConstr. Co., 162 Ala. 396, 50 So. 341 (1909), the corporate presence within the state for purposes incidental to the transaction of interstate business is not doing business within the meaning of that statute. J.R. Watkins Co. v. Goggans,242 Ala. 222, 5 So.2d 472 (1942). Our supreme court has explained:
 "[F]or a business to be governed by Alabama's business qualification laws, it must be engaging in business in Alabama. For purposes of these laws, we distinguish between acts taken in the exercise of the corporate function, i.e., acts taken in performance of the ordinary corporate business, and incidental acts not a part of that business. As stated by this Court in Alabama Western R.R. v. Talley-Bates Constr. Co., 162 Ala. 396, 402, 50 So. 341, 342
(1909), `the doing of a single act of business, if it be in the exercise of a corporate function, is prohibited.'
 "In Friedlander Bros. v. Deal, 218 Ala. 245, 118 So. 508 (1928), the Court. . . . stated that nonqualified foreign corporations are `"prohibited from doing a single act of business in this state, if done in the exercise of its corporate function" — meaning, of course, the exercise of the function or business it was organized to do, and not a purely incidental and preparatory act.' 218 Ala. at 248, 118 So. at 511, quoting Muller Mfg. Co. v. First Nat'l Bank, 176 Ala. 229, 57 So. 762 (1912). The Friedlander Court acknowledged `the important distinction between a merely incidental preliminary step and the doing or transaction of the real business of the corporation.' 218 Ala. at 247, 118 So. at 510. It quoted *Page 59 Sullivan v. Sullivan Timber Co., 103 Ala. 371, 379, 15 So. 941, 944, 25 L.R.A. 543 (1894), in stating:
 "`"The real test [to be applied is:] is the corporation engaged in the transaction of business, or any part thereof, it was created and organized to transact[?] If it be, it `does business' within the meaning of the Constitution. If it be not — if the act it is doing, or has done, is not within its general powers and franchises — it is not the business to which the constitutional requirement is directed."'
 "218 Ala. at 247, 118 So. at 510."
Vines v. Romar Beach, 670 So.2d at 903.
We conclude that, under the facts of this case, the purchase of chattel paper by Casa does not constitute doing business within the State of Alabama under the door-closing statute. InAssociates Capital Services Corp. v. Loftin's Transfer StorageCo., 554 F.2d 188 (5th Cir. 1977), the former Fifth Circuit,[3] applying Alabama law, held that under the facts in that case a foreign corporation was not doing business in Alabama so as to require it to qualify to do business in order to bring a diversity action to collect contract payments allegedly due and owing from the defendant.[4] In that case, the essence of the corporation's business was the purchase of chattel paper secured by personal property, some of which was located in Alabama. The chattel paper was assigned to the corporation in Georgia, and the corporation's contacts with Alabama residents had been almost exclusively through the mail and by telephone.554 F.2d at 189-90. See also Continental Assurance Co. v.Ihler, 53 Idaho 612, 26 P.2d 792 (1933) (foreign corporation's purchase, outside state, of notes and mortgages, and collection of interest and commencement of suit to collect indebtedness within state, held not to be "doing business" in state, so that corporation could maintain suit without complying with statutes respecting foreign corporations).
In the present case, it is undisputed that Casa is an Ohio corporation. However, the only evidence of Casa's connection to the State of Alabama was its purchase of the promissory note from Colonial Bank. The assignment reflects that that transaction occurred in Ohio. Casa does not maintain any offices within the State of Alabama, nor does it have any employees or agents within the State of Alabama. The only contact between Boles and Casa before Casa instituted this collection action was through the United States mail or other delivery service or by long-distance telephone calls, all originating in Ohio. The prosecution of lawsuits in this state to recover on otherwise valid contracts does not constitute doing business within the State of Alabama under the door-closing statute. Franklin Life Ins. Co. v. Ward,237 Ala. 474, 187 So. 462 (1939). We hold that in merely seeking to enforce its contract, Casa was not doing business within the State of Alabama within the meaning of § 10-2B-15.02, and, therefore, that the judgment of the trial court is due to be reversed. *Page 60 
We note that Boles argues for the first time in his appellate brief that because Casa purchased the promissory note from Colonial Bank and was assigned Colonial Bank's rights under the promissory note, the underlying promissory note must also evidence an interstate transaction in order for Casa to be exempt from § 10-2B-15.02. Although such an inquiry would be appropriate if Colonial Bank had also been a nonqualified foreign corporation, such is the not the case here. See §10-2B-15.02(a) (specifically stating that that statutory provision applies to "any person claiming through or under the foreign corporation by virtue of the contract or agreement");see also North Alabama Marine, Inc. v. Sea Ray Boats, Inc.,533 So.2d 598 (Ala. 1988), and First Investment Co. v. McLeod,363 So.2d 774 (Ala.Civ.App. 1978) (where nonqualified corporate assignees of note (McLeod) and financing agreement (Sea Ray) sought to enforce those contracts in Alabama courts, this court applied the intrastate-versus-interstate analysis under the door-closing statute to the underlying transaction where the corporate assignors were also nonqualified foreign corporations). In the present case, the limited power of attorney reflects that Colonial Bank is an Alabama corporation; therefore, § 10-2B-15.02
cannot be used as a defense to the validity of the enforcement of the underlying promissory note. See § 10-2B-15.02 (specifically providing that it applies to foreign corporations).
REVERSED AND REMANDED.
CRAWLEY, P.J., and PITTMAN, J., concur.
MURDOCK and BRYAN, JJ., concur in the result, without writing.
[1] We note that Boles points out for the first time in his appellate brief that the assignment reflects that it was executed on October 8, 2004, approximately five months after Casa filed this collection action on May 19, 2004.
[2] The limited power of attorney gave Cadle and other agents of Casa the power to perform certain acts on behalf of Colonial Bank relating to certain accounts that Casa had purchased from Colonial Bank on November 19, 2002; however, the limited power of attorney did not identify the specific accounts.
[3] We note that the United States Court of Appeals for the Eleventh Circuit was established on October 1, 1981, pursuant to the Fifth Circuit Court of Appeals Reorganization Act of 1980, P.L. 96-452, 94 Stat. 1995. Opinions of the former Fifth Circuit are binding on the Eleventh Circuit. Bonner v. City ofPrichard, 661 F.2d 1206 (11th Cir. 1981).
[4] "It is well settled law that if a plaintiff is prohibited from maintaining an action in a state court because of its failure to qualify to do business within the state, it is barred from prosecuting its claim as a diversity action in a federal district court." Associates Capital Servs. Corp. v. Loftin'sTransfer Storage, 554 F.2d at 189.