(92 South. 4)

## FARMERS' & GINNERS' COTTON OIL CO. v. BACCUS.  (6 Div. 494.)

(Supreme Court of Alabama. Nov. 10, 1921. Rehearing Denied Dec. 22, 1921.)

Corporations ☞521—Whether corporation was doing business in county where sued held for jury.

Whether a corporation, in sending its agent into a county to purchase cotton seed, could be sued therein under Code 1907, § 6112, as amended by Acts 1919, p. 240, providing that corporation may be sued in any county in which it does business by agent or was doing business at the time the cause of action arose, was for the jury.

Sayre, Somerville, and Gardner, JJ., dissenting.

Appeal from Circuit Court, Marion County; T. L. Sowell, Judge.

Action by John W. Baccus, against the Farmers' & Ginners' Cotton Oil Company, in assumpsit. Judgment for plaintiff, and defendant appeals. Transferred from Court of Appeals under section 6, Acts 1911, p. 449. Affirmed.

E. B. & K. V. Fite, of Hamilton, for appellant.

The defendant was entitled to the affirmative charge on its plea in abatement. 124 Ala. 367, 27 South. 517; 149 Ala. 547, 42 South. 837; 103 Ala. 371, 15 South. 941, 25 L. R. A. 543; 71 Ala. 60; 68 Ala. 104; 90 Ala. 505, 8 South. 101; 90 Ala. 134, 7 South. 764; 68 Ala. 453; 69 Ala. 379. Counsel discuss assignments of error, with the insistence that the court committed error in its ruling on the evidence, but they cite no further authority.

W. F. Finch, of Jasper, for appellee.

Suit was properly brought in Marion county, and under the evidence the defendant was not entitled to the affirmative charge. Section 6112, Code 1907; 202 Ala. 354, 80 South. 436; 202 Ala. 22, 79 South. 360; 201 Ala. 203, 77 South. 729; 200 Ala. 496, 76 South. 438; 198 Ala. 642, 73 South. 958; 124 Ala. 367, 27 South. 517; 150 Ala. 161, 43 South. 717; 15 Ala. App. 675, 74 South. 761.

GARDNER, J. Appellee sues appellant on common counts in the circuit court of Marion county. The defendant interposed a plea

in abatement to the effect that it was a domestic corporation, having its domicile and place of business in Birmingham, Jefferson county, Ala., and had not done business or was not doing business by agent in Marion county, and was therefore not subject to suit therein. The issues presented by the plea in abatement were submitted to a jury, resulting in a finding in favor of the plaintiff. The refusal of the affirmative charge requested by the defendant upon the issues presented by these special pleas constitute the first question presented for consideration.

The evidence consisted of two witnesses called by the defendant. One Perry, who resided in Marion county, testified that in the fall of 1919 he purchased cotton seed as a broker for the defendant; that what he purchased was by carload lots, and that he had no authority to buy any seed for defendant without confirmation thereof from the home office in Birmingham. He was paid by defendant $1 per ton as commission, the seller being paid direct by checks mailed from the defendant's office in Birmingham; the seed being shipped by the seller to the defendant's home office. The defendant had no office in Marion county. The witness had purchased seed for the defendant during several seasons under similar arrangements. The seed purchased by the witness for the defendant was at the price obtained at the time from the latter's home office; all sales being subject to confirmation in Birmingham. The next witness, one Kidd, was assistant manager of the defendant company at the time of the sale here in controversy. He stated that the main office of the defendant was in Birmingham, and that there was no office elsewhere in the state; that the agreement was with Mr. Perry; that whenever he could locate any cotton seed and could turn them to the defendant he would be paid so much per ton as commission; all purchases being subject to confirmation at the office in Birmingham. Some of the evidence of this witness further tended to show that after Perry had obtained the price from the defendant's office at Birmingham he had authority to purchase the seed. The defendant company also bought seed direct. It was without dispute that the defendant was engaged in crushing the seed and making products from them, with headquarters and manufacturing plant located in Birmingham. In speaking of the business of the defendant corporation the witness Kidd said:

"It was engaged in the manufacture of cotton seed products. They had a plant in connection with the operation of cotton seed crushers, and an office, etc. They made cotton seed oil. They made other products besides cotton seed oil, meal, lint, hulls and fiber. Their main office was in Birmingham, Jefferson county, Ala., during that time. All of their plants which were engaged in the making of cotton seed products—production of oil and other products—were in Birmingham, Jefferson county."

Section 6112 of the Code of 1907, as amended by Acts of 1919, p. 240, reads as follows:

"A foreign or domestic corporation may be sued in any county in which it does business by agent, or was doing business by agent at the time the cause of action arose; but all actions for personal injuries must be brought in the county where the injury occurred, or in the county where the plaintiff resides, if such corporation does business by agent in the county of plaintiff's residence."

There is much argument devoted to the proposition that witness Perry was but a broker, and not an agent of the defendant within the meaning of the foregoing statutory provision, and that the case in this respect falls under the decision of International Cotton Seed Oil Co. v. Wheelock, 124 Ala. 367, 27 South. 517. The view which we take of the case renders a consideration of that argument unnecessary.

The foregoing statute received much discussion in Sullivan v. Sullivan Timber Co., 103 Ala. 371, 15 South. 941, 25 L. R. A. 543, with particular reference to the words "does business by agent." It was there held that the mere presence of an agent within the state or particular county, with authority to transact some particular business not involving the exercise of corporate powers and franchises, and not part of the business the corporation was created to transact, was not within the foregoing statute. The Sullivan Case gave full approval to the holding of this court in Beard v. Union & Am. Pub. Co., 71 Ala. 60, quoting therefrom the following language:

"There must be a doing of some of the works, or an exercise of some of the functions, for which the corporation was created, to bring the case within that clause" [referring to the first clause and fourth section].

In the Sullivan Case it was held that the railroad and machinery situated in Conecuh were mere adjuncts or appurtenances to the sawmill which had been operated in the county of Escambia, and the mere location of an agent in the former county for the proper care and protection of this property was not in the exercise of corporate powers for the transaction of the business for which the corporation was created and organized within the meaning of the statute. In the Beard Case, supra, it was held that the company, having an agent in the state to receive and collect subscriptions for a newspaper it was publishing in another state, was not "doing business" within the meaning of the Constitution. In International Cotton Seed Oil Co. v. Wheelock, supra, it was said:

"Not every act done within the corporate powers will constitute the business meant by the statute."

In applying the test laid down in the Beard Case, supra, the court said:

"It may not always be easy to distinguish between acts done in the exercise of corporate functions and those done merely within corporate powers."

This distinction was also recognized in Holman v. Durham Buggy Co., 200 Ala. 556, 76 South. 914. In Abraham Bros. v. Southern Ry., 149 Ala. 547, 42 South. 837, it was pointed out that the words "does business," as used in the constitutional provision and the statute, must have the same meaning. In that case the Southern Railway was sued in Montgomery county, but it had no line of railroad in that county, and did no business therein other than to have located in the city of Montgomery two soliciting agents, one a freight agent to solicit shipments of freight in that territory for the defendant railroad, and the other a traveling passenger agent to solicit passenger traffic; neither agents being authorized to enter into contracts to bind the company or receive money for the company. The court said:

"Upon the principles declared in Beard v. Union & American Publishing Co., 71 Ala. 60, we feel constrained to hold that the act of the defendant in constituting agents, with no power or authority to bind it, but simply to solicit traffic for it, was not 'doing business,' within the constitutional or statutory provisions."

In connection with these authorities might also be cited 19 Cyc. 1272, 1280; 2 Beach on Private Corporations, § 416; Advance Lbr. Co. v. Moore, 126 Tenn. 313, 148 S. W. 212; John Deere Plow Co. v. Wyland, 69 Kan. 255, 76 Pac. 863, 2 Ann. Cas. 304, and note.

The purchase of cotton seed by the defendant corporation was of course within its corporate powers, but it was an adjunct, or merely a necessary incident to its business, and not in the exercise of functions for which the corporation was created. It was incorporated for the purpose of manufacturing cotton seed into oil and other products for the market. None of this was done in Marion county, nor were any of the products sold by agents therein. It merely purchased direct from the owner, and also through witness Perry, who resided in that county, the raw material, the cotton seed, for the purpose of manufacturing it into cotton seed products. This was a preliminary step, but, as previously stated, a necessary incident to its business, but not an exercise of its corporate functions within the meaning of the foregoing statutory provision.

The case of Beard v. Union & Am. Pub. Co., supra, has been repeatedly approved and followed by this court, and was evidently a controlling influence in the more recent case of Abraham Bros. v. Southern Ry., supra.

The authorities elsewhere disclose some conflict upon this question (2 Words & Phrases, Second Series, p. 108 et seq.); but our decisions have drawn the distinction here pointed out, and have followed the rule laid down in the Beard Case, from which we should not now depart. Following these decisions, therefore, under the undisputed proof in this case, the defendant was not "doing business" within the meaning of those words as found in section 6112 of the Code. We are therefore of the opinion that the trial court committed reversible error in refusing the affirmative charge upon the issue presented by the pleas in abatement.

The foregoing represents the views of the writer, with whom Justice Somerville concurs, but upon consultation the other members of the court do not agree, and are of the opinion that the question as to whether or not defendant was "doing business" by agent in Marion county within the meaning of section 6112 of the Code was properly left to the determination of the jury under the evidence in the case, and that the affirmative charge was correctly refused; and such is the holding of the court.

This litigation arose over the sale of a carload of cotton seed by plaintiff to defendant through one Perry. The price agreed upon was $81 per ton. It is insisted by defendant that the seed were purchased upon what is known as "basis prime," that is, that they were to be dry, sound seed; and that upon delivery of the seed at the plant of the defendant in Birmingham a chemical analysis was made, disclosing that the seed did not come up to this grade, and the defendant remitted to the plaintiff $65 per ton. Plaintiff sues to recover the difference between the $65 per ton remitted and the $81 per ton, the agreed price.

The evidence for the plaintiff tends to show that the seed were good, sound, dry seed, but it is also contended that the seed were bought for $81 per ton without regard to grade or classification, and nothing was said as to the purchase being upon "basis prime." These constituted the disputed issues of fact for the determination of the jury.

In making proof as to the number of tons contained in the car, plaintiff offered the testimony of witnesses in proof of the correctness of certain entries made in his book, as to the weights of various lots of seed placed in the car. Among these entries was one showing the amount of said seed placed in the car by the Winfield Mercantile Company, constituting a considerable portion of the shipment. This particular entry was ruled out by the court when first offered, because of insufficient proof in regard to its correctness. Subsequently plaintiff examined one Williams, who was general manager of the Winfield Mercantile Company, who testified as to what in his opinion was the correct weight of seed placed in the car by said

company. He did not testify, however, in regard to the entries or to any knowledge concerning the entries in the book. Plaintiff then offered in evidence entries in the book showing the weight of seed furnished by the Winfield Mercantile Company. The objection of defendant was overruled, and the entries permitted in evidence. This was error. The witness Williams gave no evidence in regard to these particular entries, nor was there any testimony showing who made them, who entered them in the book, or otherwise as to their correctness. The weight of the seed, as testified to by Williams, corresponded to the weight as disclosed by the entries; but this did not suffice to make the entries admissible without the necessary preliminary proof just referred to. The court therefore in this ruling committed reversible error.

The plaintiff was in the mercantile business, and had also been engaged in the cotton ginning business. He insisted that the seed were entirely all right, and further that they were not sold on what is referred to as "basis prime."

There was also evidence tending to show that about the same time this particular car of seed was sold to the defendant, the plaintiff also sold a car of seed to the Magic City Cotton Oil Company. Defendant on cross-examination of plaintiff by numerous questions propounded attempted to elicit this fact, and that the seed sold to the Magic City Company were taken from the same house and mingled with the general lot of seed sold to the defendant, and, further, that the seed sold to the Magic City Company were defective. To these questions propounded to the plaintiff on cross-examination, the court sustained objection. In this there was error.

One of the sharply contested questions of fact related to the quality of seed purchased by defendant; and we are of the opinion that it was competent, as shedding some light upon this question, for the defendant to show the sale of other seed at the same time to another company, which came out of the same house, and from the general lot of seed sold defendant, and at the same time, and that these seed were defective. We are further of the opinion that the extracts from the letters of plaintiff, offered in evidence by the defendant, which bore upon the quality of seed sold to the Magic City Company, were improperly excluded.

While we recognize that the scope of the cross-examination is a matter resting largely within the discretion of the trial court, yet where the party, by the rulings, is deprived of substantial testimony, this court will reverse.

The plaintiff was asked if he knew what "basis prime" meant. The objection to the motion was sustained. As previously noted, the plaintiff was a man of business experience, and it was the insistence of defendant that the seed had been bought upon the "basis prime." We are of the opinion therefore that the plaintiff should be permitted to answer the question as to whether or not he understood the meaning of this expression. The witness Couch for the defendant testified he was present at the time the purchase of these cotton seed was made, and that plaintiff told Mr. Perry that "he would guarantee these seed to be in sound condition." Plaintiff objected to this answer as being a conclusion of the pleader, which objection was sustained. As we interpret the meaning of the answer of the witness, in the light of the question propounded, we are of the opinion the ruling of the court excluding the same was error.

This same witness was asked concerning this transaction if anything was said about "basis prime" weight, and plaintiff's objection to this question was sustained. We think the witness should have been permitted to answer this question, as it concerned one of the issues of fact to be determined.

The conclusion is reached that the ruling of the court upon these questions of evidence call for a reversal of the cause. The record has been carefully examined to ascertain if this testimony was subsequently admitted, or testified to without objection. The writer and Justices Sayre and Somerville are of the opinion this is true only to a limited extent, but not sufficient to save the cause from reversal, and that the rulings on evidence were prejudicial.

The majority of the court, however, consisting of Chief Justice ANDERSON, Justices McCLELLAN, THOMAS, and MILLER, think otherwise and upon examination of the record of this cause in consultation entertain the view that the rulings of the court on evidence pointed out in this opinion were either harmless or subsequently cured, and that there was no error in the refusal of any of the charges. The result of the holding of the majority is that the judgment be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN, THOMAS, and MILLER, JJ., concur.

SAYRE, SOMERVILLE, and GARDNER, JJ., dissent.