MURDOCK, Justice
(dissenting).
In the present case, International Paper Company (“IP”), entered into two contracts with other parties pursuant to which those parties were to supply raw material, i.e., harvested timber, needed by IP for the production by IP of plywood at its plywood-manufacturing plant in Butler County. The materials before us indicate that IP’s agents entered into these contracts in various counties other than Co-necuh County, and there is no evidence indicating that IP and Chapman Forest Products, Inc. — the respondents here — actually ever received any timber harvested in Conecuh County pursuant to these agreements,[2] much less, I would add, that IP itself went onto any lands in Conecuh County and harvested any timber. Furthermore, for all that appears from the materials before us, which do not include the contracts themselves, these contracts contemplated that timber might be harvested by other parties and delivered to IP at its plant in Butler County.
Consistent with my discussion of Ex parte Scott Bridge Co., 834 So.2d 79 (Ala.2002), and other cases in my dissenting *915 opinion in Ex parte Greenetrack, Inc., 25 So.3d 449 (Ala.2009), I respectfully dissent. As I wrote in that case:
“In Ex parte Scott Bridge Co., [834 So.2d 79 (Ala.2002),] the sale and purchase of supplies in Chambers County appear to me to have been activities by which the sellers of those supplies did their business. I question whether the fact that Scott Bridge was the purchaser in those transactions meant that it was ‘do[ing] business by agent in [Chambers County]’ within the meaning of § 6-3-7(a)(3), Ala.Code 1975, intended by the legislature. Specifically, I question whether Scott Bridge was doing its business by making the purchases it made.
“Meaningful authority exists for drawing the foregoing distinction. For example, in Frees v. Southern Michigan Cold Storage Co., 43 Mich.App. 756, 757, 204 N.W.2d 782, 783 (1972), the court explained: ‘[T]he defendant’s business is that of storing fruits and vegetables. The farmers and processors bring their fruits and vegetables to defendant’s warehouse in Hart, Oceana County for storage. Defendant’s contacts with Muskegon County are limited to the purchasing of equipment and material for the maintenance of its refrigeration equipment,’ except for one customer that the court noted actually brought its produce to Oceana County for storage. (Emphasis added.) Under these facts, the court held that the defendant ‘was not doing business in Muskegon County by purchasing equipment and materials in Muskegon County to maintain its refrigeration equipment.’ 43 Mich.App. at 758, 204 N.W.2d at 783-84.[6]
[[Image here]]
*916 25 So.3d at 458 (Murdock, J., dissenting).
Additional authority—namely the decisions of this Court in Farmers’ & Ginners’ Cotton Oil Co. v. Baccus, 207 Ala. 75, 92 So. 4 (1921), and in the various cases discussed therein—though not referenced in my dissent in Greentrack, is also instructive. By way of example in Farmers’ itself, the Court concluded:
“The purchase of cotton seed by the defendant corporation was of course within its corporate powers, but it was an adjunct, or merely a necessary incident to its business, and not in the exercise of functions for which the corporation was created. It was incorporated for the purpose of manufacturing cotton seed into oil and other products for the market. None of this was done in Marion county, nor were any of the products sold by agents therein. It merely purchased direct from the owner, and also through witness Perry, who resided in that county, the raw material, the cotton seed, for the purpose of manufacturing it into cotton seed products. This was a preliminary step, but, as previously stated, a necessary incident to its business, but not an exercise of its corporate functions within the meaning of the foregoing statutory provision.”
207 Ala. at 77, 92 So. at 5 (emphasis added).[3]
To the foregoing I would add the following thought: In Greenetrack this Court held that a corporation that engaged in the active conduct of operating a bus on a regular basis in a county neighboring the county in which it did business to transport residents of the neighboring county to its primary business facility so that they could serve as customers of that facility was not doing business in that neighboring county. 25 So.3d at 452-55. If such active conduct does not constitute doing business in a neighboring county, I question how the relatively passive conduct of merely entering into timber-supply contracts— contracts actually executed outside Cone-cuh County—constitutes the doing of business by IP in Conecuh County.
Based on the foregoing, I respectfully dissent.

. Although these contracts were recorded in the probate records of Butler, Conecuh, and Covington Counties, this fact alone would allow one to infer only that timber might be supplied from any one of these counties, not that it was necessarily supplied from any one of them.

“ 6 In Hartung v. Central Illinois Public Service Co., 110 Ill.App.3d 816, 66 Ill.Dec. 493, 443 N.E.2d 16 (1982), the court reasoned:
“ ‘The evidence further revealed that defendant consummated commercial transactions with 10 different Madison County residents which totaled nearly $4.4 million in 1979[, including purchases of approximately $1 million of parts and supplies from numerous vendors]....
“ ‘Plaintiff maintained that these commercial transactions contributed directly to defendant’s production and marketing of its principal consumer product, electricity. Plaintiff further contends that these transactions were done systematically and continuously thus establishing that defendant was “doing business” within Madison County within the meaning of the venue statute.
[[Image here]]
“ ‘ . [I]n order to establish that a defendant is doing business within a county for purposes of venue, quantitatively more business activity within the county must be demonstrated than where the question is whether the defendant has transacted any business within the State for purposes of service of process pursuant to section 17. The defendant must, in short, be conducting its usual and customary business within the county in which venue is sought.” [Baltimore & Ohio R.R. v. Mosele,] 67 Ill.2d 321, 329-330[, 10 Ill.Dec. 602, 606], 368 N.E.2d 88, 92 [ (1977) ].
“ ‘... [W]e believe the evidence does not support the trial court’s finding of venue in Madison County in the present case. Defendant’s business is the production and marketing of electricity which is not carried on by defendant in Madison County.’
“110 Ill.App.3d at 818-20, 66 Ill.Dec. at 495-96, 443 N.E.2d at 17-19 (emphasis added). Similarly, in Gardner v. International Harvester Co., 113 Ill.2d 535, 541, 101 Ill.Dec. 842, 845, 499 N.E.2d 430, 433 (1986), the Illinois Supreme Court rejected an argument that purchases of materials by a manufacturer constituted doing business for venue purposes: ‘Nor do we believe that Harvester’s purchases from St. Clair County suppliers show that the company is engaged in business there. Harvester buys the materials for use in its business of designing, manufacturing, and marketing tractors, trucks, and other machines, and the purchases are but a necessary incident of that.’ See also Saturn Sys., Inc. v. Saturn Corp., 659 F.Supp. 865 (D.Minn.1987); Westinghouse Electric Corp. v. Superior Court, 17 Cal.3d 259, 270, 551 P.2d *916 847, 855, 131 Cal.Rptr. 231, 239 (1976) (also noting that ‘[t]he change of venue issue is directed at completely different policy considerations’ and that ‘[i]t is inappropriate to apply a “minimum contacts” test to determine whether defendants are doing business’ in a given county for venue purposes).”

. If this was a case in which the evidence indicated that IP or Chapman itself actively engaged in the harvesting of timber from Co-necuh County on a regular basis, my conclusion might be different.