Rel: March 10, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2022-2023

_____

## CL-2022-1217

_____

## Ex parte Honda Manufacturing and Development of Alabama, LLC

## PETITION FOR WRIT OF MANDAMUS

## (In re: Dennis G. Allison

## v.

## Honda Manufacturing and Development of Alabama, LLC)

## (Etowah Circuit Court:  CV-22-900164)

HANSON, Judge.

Honda Manufacturing and Development of Alabama, LLC ("Honda"), petitions this court for a writ of mandamus directing the

Etowah Circuit Court ("the circuit court") to change the venue of the underlying action, workers' compensation case, to Talladega County. In the underlying action, Dennis Allison ("Dennis") allegedly sustained an injury while working at Honda's automobile-manufacturing facility located in Talladega County. Dennis resided in Etowah County and filed a complaint for worker's compensation benefits against Honda in the Etowah Circuit Court. Honda then filed its motion to transfer venue, which the circuit court denied. For the reasons discussed herein, we grant the petition and issue the writ.

Background

The materials submitted in support of and in opposition to the petition for a writ of mandamus indicate the following factual background. On April 26, 2022, Dennis sued Honda in Etowah County, where he resided, after he sustained injuries to his lower back while working in Honda's manufacturing facility located in Talladega County. Dennis alleged that he was working in the line and scope of his employment when he was injured and sought benefits under the Alabama's Workers' Compensation Act, §25-5-1, et seq., Ala. Code 1975. On June 15, 2022, Honda filed its motion to change venue, averring that

Etowah County was an improper venue pursuant to § 6-3-7(a)(3), Ala. Code 1975, because, Honda said, the events giving rise to Dennis's claim occurred in Talladega County; its principal office in Alabama was located in Talladega County; it sells all of its automobiles to a separate legal entity, and it did not conduct "business by agent" in Etowah County. In the alterative, Honda argued that if Etowah County is a proper venue, the most convenient venue is Talladega County under the doctrine of forum non conveniens.

In support of its contention that it did not conduct business by agent in Etowah County, Honda attached the affidavit of Michael Gaines, Division Leader of Honda's manufacturing planning and control division, which provides, in pertinent part:

> "1. I am the Division Leader of the Manufacturing Planning and Control Division for Honda Development and Manufacturing of America, LLC (hereinafter 'HDMA') the defendant in the above matter.
>
> "2. HDMA is a corporation that is organized and existing under the laws of the State of Ohio. HDMA's Alabama headquarters, principal place of business and principal Alabama office is located at 1800 Honda Drive, Lincoln, Talladega County, Alabama.
>
> "3. HDMA's only manufacturing facility in the State of Alabama is located at 1800 Honda Drive, Lincoln, Talladega County, Alabama. The plaintiff's employment with the

defendant was located at HDMA's manufacturing facility in Talladega County, and any alleged work injury would have occurred there as well.

"4.   The vehicles manufactured for sale at the manufacturing facility in Lincoln, Alabama are sold [by] American Honda Motor Company, Inc. (hereinafter 'AHMCI'). AHMCI is a separate legal entity with its principal place of business in Torrance, CA.

"5.  HDMA is not involved in and does not control the distribution or sale of the Honda vehicles it manufactures to consumers anywhere in Alabama or the world.  For all the vehicles sold in Alabama and the United States, AHMCI takes delivery, title, and possession of the vehicles and AHMCI arranges for transportation, delivery and the sale of all vehicles in the United States.

"6. HDMA has no relationship, contractual or otherwise, with any Honda dealership located in Alabama, nor does HDMA have any control over the actions, rights or obligations of any such dealers.

"7.   HDMA does have at least one vendor in Etowah County, Alabama that provides some parts or services used in the operation of its business or the manufacture of its vehicles.  Any services rendered or parts supplied by these vendors or any other vendors are performed at or delivered to the manufacturing plant at 1800 Honda Drive, Lincoln, Talladega County, AL.  HDMA does not take delivery of parts from any vendors at any location other than 1800 Honda Drive, Lincoln, Talladega County, AL.  HDMA does not have any ownership interests in any parts supplier in Etowah County, Alabama and upon information and belief these vendors are separate legal entities.

"8.   HDMA does not do business by agent in Etowah County, Alabama."

4

On August 31, 2022, Gaines's deposition was taken. On October 7, 2022, Dennis filed a response with supporting evidence in opposition to Honda's motion to change venue. Dennis included parts of Gaines's deposition which stated that Honda was in an active property-lease arrangement with the City of Gadsden in Etowah County pursuant to which Honda paid a total of $22,469.88 per month for the lease of a warehouse space that stores its shipping racks and containers. According to Gaines, the shipping racks and containers stored in Etowah County had been previously used for shipping parts from automobile-part manufacturers to Honda's manufacturing facility and are stored all over North America, but, Gaines testified, the shipping racks and containers are no longer being used by Honda. Gaines also testified that all the automobiles that Honda produces are sold exclusively to a separate legal entity and that Honda has no involvement in the distribution or sale of those automobiles.

Dennis also included a tangible personal-property tax return filed by Honda. The tax return provided that Honda pays personal-property tax to Etowah County for the value of the items stored in the warehouse.

On October 12, 2022, and October 21, 2022, the circuit court held a hearing on the motion to change venue. After the hearing, the circuit court denied Honda's motion to transfer venue on October 21, 2022. Thereafter, Honda timely filed its petition for a writ of mandamus.

Standard of Review

> "Mandamus is an extraordinary remedy. An appellate court will grant a petition for a writ of mandamus only when '(1) the petitioner has a clear legal right to the relief sought; (2) the respondent has an imperative duty to perform and has refused to do so; (3) the petitioner has no other adequate remedy; and (4) this Court's jurisdiction is properly invoked.' Ex parte Flint Constr. Co., 775 So. 2d 805, 808 (Ala. 2000) (citing Ex parte Mercury Fin. Corp., 715 So. 2d 196, 198 (Ala. 1997)). Review by mandamus is not appropriate where the petitioner has another adequate remedy, such as an appeal. Ex parte Jackson, 780 So. 2d 681 (Ala. 2000); Ex parte Inverness Constr. Co., 775 So. 2d 153 (Ala. 2000); Ex parte Walters, 646 So. 2d 154 (Ala. Civ. App. 1994)."

Ex parte Amerigas, 855 So. 2d 544, 546-47 (Ala. Civ. App. 2003).

> "'The burden of proving improper venue is on the party raising the issue and on review of an order transferring or refusing to transfer, a writ of mandamus will not be granted unless there is a clear showing of error on the part of the trial judge.' Ex parte Finance America Corp., 507 So. 2d 458, 460 (Ala. 1987). In addition, this Court is bound by the record, and it cannot consider a statement or evidence in a party's brief that was not before the trial court. Ex parte America Res. Ins. Co., 663 So. 2d 932, 936 (Ala. 1995)."

Ex parte Pike Fabrication, Inc., 859 So. 2d 1089, 1091 (Ala. 2002).

Analysis

In its motion to transfer venue, Honda relied upon § 6-3-7, Ala. Code 1975, which generally governs venue in actions against corporations.[1]

_____

[1]We note that our supreme court has applied § 6-3-2, Ala. Code 1975, the statute governing venue for individuals, to certain partnerships. See Ex parte Miller, Hamilton, Snider & Odom, LLC, 942 So. 2d 334, 336-37 (Ala. 2006)(holding that the defendant law firm, a limited-liablity company, was a partnership for purposes of venue and was governed by § 6-3-2(a)(3)); Ex parte Burr & Forman, LLP, 5 So. 3d 557, 565 (Ala. 2008)(holding that venue was proper under § 6-3-2, Ala. Code 1975, in a case involving a defendant law firm); Ex parte WMS, LLC, 170 So. 3d 645, 650 (Ala. 2014)(holding that venue was improper under § 6-3-2, Ala. Code 1975, because the defendant law firm and its four members sued were not residents of the forum county and no identifiable act or omission that caused the litigation occurred in the forum county).

The applicability of § 6-3-2, Ala. Code 1975, to limited-liability companies, in general, was discussed by Justice Mitchell in Ex parte Alabama Power Co., [Ms. 1210104, June 30, 2022] __ So. 3d __ (Ala. 2022) (Mitchell, J., joined by Parker, C.J., and Wise, J., concurring in the result). In Ex parte Alabama Power Co., which involved an action against a sanitary service company, a limited-liability company, our supreme court applied § 6-3-2, Ala. Code 1975, relying on the authorities cited by Chief Justice Moore in Ex parte WMS, LLC, supra. However, the statutory basis for the Ex parte WMS, LLC, line of cases treating limited-liability companies as partnerships for venue purposes has been undermined by the repeal and replacement of the corporate-law provisions that underlay the authorities cited in Ex parte WMS, LLC. See § 10A-5A-1.04(a), Ala. Code 1975 (stating that a limited-liability company "is a separate legal entity" irrespective of tax status).

In Ex parte Alabama Power Co., supra, Justice Mitchell, in an opinion concurring with the result, states that a suit against a limited-

Honda avers that, because it did not conduct business by agent in Etowah County, Etowah County is an improper venue. Honda also asserts that even if venue is proper in Etowah County, the action should be transferred to Talladega County under the doctrine of forum non

---

liability company is not a suit against its individual members either in form or in substance. Thus, members of a limited-liability company are not jointly and severally liable for obligations of the entity. See § 10A-5A-3.01, Ala. Code 1975. The notion that the proper venue for an action against limited-liability companies is governed by § 6-3-2, Ala. Code 1975, is implausible. "Allowing [a limited-liability company] to be sued anywhere one of its members resides is a recipe for inconvenience. [A limited-liability company] may easily have members who live far from where it does business or from any other logical venue for a suit against the entity." Ex parte Alabama Power Co., [Ms. 1210104, June 30, 2022] __ So. 3d at __ n.5.

In Ex parte Blair Logistics, LLC, 157 So. 3d 951 (Ala. Civ. App. 2014) this court unanimously held that venue was proper under § 6-3-7, Ala. Code 1975, in a case involving a limited-liability company. Our supreme court has indicated in a more recent case that § 6-3-7, Ala. Code 1975, applies to limited-liability companies. See Ex parte Road Gear Truck Equip., LLC, 300 So. 3d 1101 (Ala. 2019)(holding that § 6-3-7, Ala. Code 1975, the statute governing venue for corporations, applies when determining proper venue in cases involving limited-liability companies. Because Ex parte WMS, LLC conflicts with Ex parte Road Gear, this court is required to follow the later Ex parte Road Gear line of cases: "This court is bound by the decisions of our supreme court, and, in case of any doubt as to which decision to follow, the latest pronouncement control." Ex parte Ocean Reef Devs. II, LLC, 84 So. 3d 900, 905 (Ala. Civ. App. 2011); see also Gilbreath v. Eastwood Foods, Inc., 575 So. 2d 87, 88 (Ala. Civ. App. 1990), aff'd, 575 So. 29 91 (Ala. 1991).

conveniens. Based on our resolution of Honda's first argument, we pretermit discussion of the second argument.

Pursuant to § 25-5-81(a)(1), Ala. Code 1975, a workers' compensation action may be filed in "the circuit court of the county which would have jurisdiction of a civil action in tort between the parties." Venue for a civil action against domestic corporations is governed by § 6-3-7(a), Ala. Code 1975, which provides:

> "(a) All civil actions against corporations may be brought in any of the following counties:
>
> > "(1) In the county in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of real property that is the subject of the action is situated; or
> >
> > "(2) In the county of the corporation's principal office in this state; or
> >
> > "(3) In the county in which the plaintiff resided, or if the plaintiff is an entity other than an individual, where the plaintiff had its principal office in this state, at the time of the accrual of the cause of action, if such corporation does business by agent in the county of the plaintiff's residence; or
> >
> > "(4) If subdivisions (1), (2), or (3) do not apply, in any county in which the corporation was doing business by agent at the time of the accrual of the cause of action."

The materials submitted to this court indicate that Honda is a manufacturing company that manufactures automobiles at its facility in Talladega County. Honda's principal place of business in Alabama is its manufacturing facility located in Talladega County. Although Honda does not maintain any corporate offices or manufacturing facilities in Etowah County, Honda purchases parts and services from multiple suppliers located in Etowah County and leases warehouse space in Etowah County. Dennis is a resident of Etowah County. He was employed as an assembly worker at Honda's manufacturing facility when he was allegedly injured.

Dennis argues that venue is proper in Etowah County under § 6-3-7(a)(3) because he is a resident of Etowah County and because, he alleges, Honda "does business by agent" there. Relying on Ex parte Road Gear Truck Equipment, LLC, 300 So. 3d 1101 (Ala. 2019)(plurality opinion), Dennis argues that Honda "does business by agent" in Etowah County because it leases a warehouse space in Etowah County for storing shipping racks and containers; it pays personal property taxes to the Etowah County Revenue Commissioner based on the value of the racks and containers stored in the warehouse space it leases; and it has

multiple suppliers in Etowah County that provide parts and services to Honda's manufacturing facility.

In <u>Ex parte Road Gear</u>, supra, the plaintiff filed her action in Marshall County because that was where she resided and, she argued, the defendant conducted business by agent in Marshall County. The defendant argued that it did not conduct business by agent in Marshall County because its principal place of business was in Franklin County; all the design, manufacturing, and testing of its products occurred in Franklin County; it did not have any real property or maintain any records or files in Marshall County; it did not directly market to consumers in Marshall County; and all of its transactions ended at the point of sale in Franklin County. Our supreme court stated that "[f]or more than a century, this Court has held that the sale of products is typically a function for which a manufacturing business is created," <u>Ex parte Road Gear</u>, 300 So. 3d at 1110, and held that the defendant did conduct business by agent in Marshall County because the "evidence reveal[ed] that customers [were] able to purchase [the defendant's] truck parts at the [agent's] store by ordering them through [the defendant's] catalog." <u>Ex parte Road Gear</u>, 300 So. 3d at 1113.

11

Further, in Ex parte Road Gear, our supreme court discussed Ex parte Mercedes-Benz U.S. International, Inc., 290 So. 3d 402 (Ala. 2019), and its applicability to that case. In Ex parte Mercedes-Benz, our supreme court held that an automobile manufacturer, whose principal place of business was located in Tuscaloosa County, was not "doing business by agent" in Jefferson County even though it purchased essential supplies for its manufacturing business from a supplier in Jefferson County. 290 So. 3d at 405. Our supreme court further determined that the automobile manufacturer "was created to manufacture automobiles," which occurred in Tuscaloosa County and that "[b]y contracting with its suppliers of automotive parts … [the automobile manufacturer was] exercising a corporate power that [was] 'merely a necessary incident' to its business of manufacturing automobiles; it [was] not exercising a business function for which it was created." Ex parte Mercedes-Benz, 290 So. 3d at 406 (quoting Farmers' & Ginners' Cotton Oil Co. v. Baccus, 207 Ala. 75, 77, 92 So. 4, 5 (1921)).

In Ex parte Road Gear, supra, our supreme court concluded that the "holding in Ex parte Mercedes-Benz turned on the distinction between 'incidental' act of purchasing supplies and [the automobile

12

manufacturer's] core purpose of manufacturing automobiles," 300 So. 3d

at 110, and stated:

"We conclude that the <u>Mercedes Benz</u> Court's analysis with respect to the <u>purchase of supplies</u> in relation to a manufacturer's corporate purpose has no application in this case because, as [the plaintiff] observes, "this case involves the <u>sale of [the defendant's] products</u> in [Marshall C]ounty." … For more than a century, this Court has held that the sale of products is typically a function for which a manufacturing business is created. In <u>International Cotton-Seed Oil Co. v. Wheelock</u>, 124 Ala. 367, 370-71, 27 So. 517, 518 (1900), the Court explained:

"'Not every act done within the corporate powers will constitute the business meant by the [venue] statute. In <u>Sullivan v. Timber Co.</u>, [103 Ala. 371, 15 So. 941 (1894)], this court, construing this statute, approved the test laid down in <u>Beard v. Publishing Co.</u>, 71 Ala. 60 [(1881)], where in defining the acts of business meant by the constitutional requirements of foreign corporations doing business in this State it was said: "There must be a doing of some of the works or an exercise of some of the functions for which the corporation was created to bring the case within the clause." In applying that test it may not always be easy to distinguish between acts done in the exercise of corporate functions and those done merely within corporate powers. In the case at bar the chartered purposes of the defendant are not disclosed by the record except as they may be inferred from the business in which it was engaged. From the proof on that subject it appears that <u>the sale of its products is as much an exercise of defendant's corporate function as is their manufacture. The disposition of products is</u>

13

> ordinarily a function necessary to the continued operations of a manufacturing corporation."

300 So. 3d at 1109-10.

The analysis in <u>Ex parte Road Gear</u>, supra, with respect to the sale of a defendant's products in relation to a manufacturer's corporate function and purpose, has no application in this case because this case involves the leasing of a warehouse space; paying personal-property tax based on the value of the property stored in that warehouse; and having suppliers in a county where Honda has no manufacturing facility or principal place of business. The <u>Ex parte Road Gear</u> defendant did not present any evidence indicating that it sold its products in mass to large retail chain stores. Rather, the testimony presented indicated that the <u>Ex parte Road Gear</u> defendant provided catalogs of its products to consumers in the forum county. In contrast, Honda does not have a target market in Etowah County, and it does not direct the arrival of its automobiles to Etowah County.

The facts in the present case are more closely aligned with the facts in <u>Ex parte Mercedes-Benz</u>, in which the automobile-manufacturing company did not "do business by agent" in the county were the plaintiff resided, even though it purchased supplies from a supplier in that county.

14

Here, Honda leases a warehouse space, pays personal property taxes, and has suppliers in a county where it does not have a manufacturing facility or a principal place of business. Honda's activities in Etowah County were merely a necessary incident of its business. Cf. Ex parte Tyson Chicken, Inc., 72 So. 3d 1 (Ala. 2011) (holding that workers' compensation action was not proper in county where employee resided despite corporation placing product in the stream of commerce at retail locations in that county, hiring employees who reside in that county, and having an agent for service of process in the forum county); Ex parte Greenetrack, Inc., 25 So. 3d 449, 454 (Ala. 2009) (holding that bus service transporting gaming customers from Pickens County to Greene County, where gaming facility was located, was incidental to corporate business functions and therefore did not constitute doing business in Pickens County as those words were used in the venue statute, even though gaming facility also had employees in Pickens County and advertised there); Ex parte City Stores Co., 287 Ala. 385, 252 So. 2d 45 (1971) (holding that department store did not do business in county other than county in which it operated retail business even though it delivered parcels into surrounding counties and advertised in television and

15

newspapers which reached surrounding counties); Ex parte R.E. Garrison Trucking, Inc., 241 So. 3d 15 (Ala. Civ. App. 2017) (holding that trucking company did not do business in forum county and, therefore, venue was improper in employee's workers' compensation action against company, when employee impermissibly allowed truck drivers to park company trucks on property in the forum county and employee's recruitment of other truck drivers for the company was incidental to company's corporate business functions).

In addition, Honda sells the automobiles it manufactures exclusively to a separate legal entity, and it is not involved in the distribution or sale of those automobiles. See Ex parte Mercedes-Benz, 290 So. 3d at 407 (rejecting the plaintiff's contention that the automobile-manufacturing company did business in Jefferson County because "some of the vehicles it manufactures are eventually sold to the public at dealerships in Jefferson County[,]" when there was no evidence indicating that the automobile-manufacturing company was involved in the retail sale of any of its manufactured automobiles; instead, all automobiles it manufactured were sold to a separate legal entity).

> "It is well-established that '[a] corporation "does business" in a county for purposes of § 6-3-7[, Ala. Code 1975,]

16

if, with some regularity, it performs there some business functions for which it was created.' <u>See</u> <u>Ex parte SouthTrust Bank of Tuscaloosa Cty., N.A.</u>, 619 So. 2d 1356, 1358 (Ala. 1993); <u>Ex parte Joiner</u>, 486 So. 2d 402, 403 (Ala. 1986); and <u>Ex parte Jim Skinner Ford, Inc.</u>, 435 So. 2d 1235, 1237 (Ala. 1983). This principle is based on a long recognized distinction between the exercise of corporate powers that are 'merely a necessary incident' to a corporation's business and 'the exercise of functions for which the corporation was created.' <u>Farmers' & Ginners' Cotton Oil Co. v. Baccus</u>, 207 Ala. 75, 77, 92 So. 4, 5 (1921)."

<u>Ex parte Mercedes-Benz</u>, 290 So. 3d at 406. The contact that Honda has with Etowah County is "merely a necessary incident" to its business and not the exercise of functions for which Honda was created, i.e., manufacturing vehicles.

Honda has demonstrated a clear legal right to have the underlying action transferred to the Talladega Circuit Court. We grant the petition and direct the circuit court to vacate its order denying the motion to change venue and to enter an order transferring the underlying action to the Talladega Circuit Court.

PETITION GRANTED; WRIT ISSUED.

Thompson, P.J., and Moore and Fridy, JJ., concur.

Edwards, J., concurs in the result, without opinion.

17